989 So.2d 42 (2007)
Minos BOREL, Sr. et al.
v.
Dr. Clinton YOUNG and Louisiana Medical Mutual Insurance Company.
No. 2007-C-0419.
Supreme Court of Louisiana.
November 27, 2007.
Opinion Granting Rehearing July 1, 2008.
Concurring Opinion on Denial of Second Application for Rehearing August 29, 2008.
*44 P. Chris Christofferson, APLC, Patricia Christofferson, for applicant.
Judice & Adley, Marc W. Judice, Lafayette, Harry Lane Tuten, III; Gachassin Law Firm, Janice Marie Culotta, Baton Rouge, for respondent.
Judice & Adley, Marc W. Judice, Lafayette, Harry Lane Tuten, III; Gachassin Law Firm, Daniel Charles Palmintier, Nicolas Gachassin, Jr., Lafayette, for respondent, on rehearing.
Kara Maureen Hadican, New Orleans, Robert Jefferson David, Lafayette, for amicus curiae Association for Justice, Louisiana, on rehearing.
Amy Waters Phillips, Baton Rouge, Robert Gahagan Pugh, Jr., Shreveport, for amicus curiae, Louisiana State Medical Society, on rehearing.
William Luther Wilson, Hon. James D. Caldwell, for amicus curiae, State of Louisiana, on rehearing.
KNOLL, Justice.
This medical malpractice action presents the question of whether a lawsuit is perempted by virtue of La.Rev.Stat. § 9:5628 because it was not filed within three years from the date of the alleged malpractice. The plaintiffs filed the instant suit against defendant physician over five years after the alleged malpractice occurred. In response, defendant filed a peremptory exception of prescription and argued before the district court the claim was perempted. The district court agreed and dismissed plaintiffs' claims with prejudice. The court of appeal affirmed, finding, however, the claims had prescribed. We granted this writ to determine whether the three-year time period found in La. Rev. Stat § 9:5628 for filing actions under the Louisiana Medical Malpractice Act ("LMMA") is prescriptive, and therefore susceptible to interruption, or peremptive. Minos Borel, Sr., et al. v. Dr. Clinton Young and Louisiana Medical Mutual Insurance Company, 07-419 (La.5/4/07), 956 So.2d 617. For the following reasons we affirm the result of the court of appeal, finding the plaintiffs' action is perempted by the clear language of La.Rev.Stat. § 9:5628.

FACTS AND PROCEDURAL HISTORY
In April 1999, Mary Borel, age 65, underwent an abdominal ultrasound, which revealed the presence of a mass within her left lower abdomen. Mrs. Borel's internist, Dr. Clinton Young, referred Mrs. Borel to Dr. Aldy Castor, an OB/GYN, for surgical evaluation. Dr. Castor recommended surgery, and on August 18, 1999, Mrs. Borel was admitted to Lafayette *45 General Medical Center ("LGMC"). Dr. Castor performed a left ovarian cystectomy and appendectomy on August 19, 1999. Mrs. Borel tolerated the procedure well. However, Mrs. Borel's condition worsened on the morning after surgery. By 5:30 p.m. that afternoon, her oxygen saturation dropped, her pulse was elevated, and her temperature spiked to 103.8 degrees. She was moved to ICU, intubated, and placed on a ventilator. It was determined that Mrs. Borel was suffering from congestive heart failure of an unknown cause.
On August 21, 1999, Dr. Castor and Dr. Kinchen performed an exploratory laparotomy for possible pelvic abscess. Mrs. Borel was placed on antibiotics, and Dr. Gary Guidry was consulted for pulmonary management. Mrs. Borel developed multiple organ failure and was taken back to surgery on August 25, 1999. She remained on antibiotic therapy, but continued to have difficulty oxygenating and remained unresponsive. By October 15, 1999, Mrs. Borel was transferred to St. Brendan's Long Term Care Facility, where she remained until her death on May 23, 2000.
On August 14, 2000, Mr. Minos Borel, Mrs. Borel's husband, and their children ("plaintiffs") filed a medical malpractice claim with the Patient Compensation Fund ("PCF") against Dr. Young, Dr. Castor, and LGMC. On January 17, 2002, the medical review panel rendered a unanimous opinion finding no breach in the standard of care rendered to Mrs. Borel by Dr. Young, Dr. Castor, or LGMC. The record indicates the plaintiffs received the opinion on January 22, 2002.
On March 28, 2002, the plaintiffs filed suit in district court against LGMC; however, Drs. Young and Castor were not named in this lawsuit. Two years later, pursuant to discovery, in January 2004, plaintiffs learned that LGMC would utilize Dr. James Falterman as an expert witness. Plaintiffs contend they "discovered" for the first time during his deposition taken on February 17, 2005, that Dr. Falterman would testify that the medical treatment provided by Drs. Young and Castor fell below the applicable standard of care in their treatment of Mrs. Borel. Plaintiffs assert, prior to this date, they had no reasonable cause to believe there was negligence by Dr. Young or Dr. Castor from any source qualified to testify on the standard of care required of an internist or an OB/GYN.
Plaintiffs attempted to amend their original petition to add Dr. Young, Dr. Castor, and the physicians' insurer Louisiana Medical Mutual Insurance Company ("LAMMICO") as defendants; however, plaintiffs' motion to amend was denied by the district court. On March 21, 2005, plaintiffs filed a separate lawsuit for malpractice against Dr. Young, Dr. Castor, and LAMMICO, asserting "Dr. Castor and/or Dr. Clinton Young jointly, severally and in solido with Lafayette General Hospital were negligent in the treatment of Mary Borel August 18 through 20, 1999...." In response to this second lawsuit, Dr. Young and LAMMICO ("Defendants") filed an exception of prescription.[1] Plaintiffs argued in response that the filing of suit against LGMC, a joint tortfeasor, interrupted prescription as to all other joint tortfeasors, including Dr. Young, citing La. Civ.Code art. 2324(C).[2] The lawsuits were ultimately consolidated by motion of the court, and a *46 hearing on defendants' exception was conducted on August 22, 2005.
The district court determined that plaintiffs' claim as to Dr. Young and LAMMICO was perempted. Thus, the district court granted defendants' exception and dismissed plaintiffs' claim against defendants, Dr. Young and LAMMICO, with prejudice. In its written reasons, the district court stated:
The rules governing the time within which a medical malpractice action can be brought are clearly set forth in La. R.S. 9:5628(A), which provides in pertinent part:
No action for damages for injury or death against any physician.... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect or within one year from the date of discovery of the alleged act, omission or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect. (Emphasis added)
La. R.S. 9:5628(A) means that in an action against a physician under the medical malpractice act, the plaintiff has one year from the alleged act, omission or neglect or one year from discovery of the alleged act, omission or neglect within which to bring an action. This one year period is, presumably, subject to all of the normal rules applied to suspension and interruption of prescription found elsewhere in the law.
But the second period of time that must be applied to all actions under the medical malpractice act is "peremptive" in nature and may not be interrupted or suspended. No action may be brought once three years have passed after the alleged act of malpractice under any circumstances. ....
* * *
The plaintiffs filed suit on March 28, 2002 only against Lafayette General Medical Center. Plaintiffs did not file suit against Dr. Clinton Young and LAMMICO until March 21, 2005, far past three years from the date of the alleged act, omission or negligence and more than three years even after Mary Borel's demise. The plaintiffs assert that suit was filed after they learned that, as part of its defense, Lafayette General Medical Center plans to offer physician expert testimony to the effect that Dr. Clinton Young's treatment of Mary Borel fell below the standard of care required under the circumstances. Clearly, under these undisputed facts, any action against these defendants is "perempted" under the provisions of La. R.S. 9:5628(A).
Plaintiffs appealed this decision, and the Third Circuit Court of Appeal affirmed, but for different reasons. Borel v. Young, 06-352, 06-353 (La.App. 3 Cir. 12/29/06), 947 So.2d 824. The court of appeal, relying on Hebert v. Doctors Memorial Hosp., 486 So.2d 717 (La.1986), found both time provisions prescriptive, and examined defendants' exception of prescription in light of LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226. The appellate court held the more specific provisions found in the LMMA control the time in which suit must be filed against health care providers covered by the Act, rather than the general codal provisions contained in La. Civ.Code art. 2324(C), and *47 finding La. R.S. 40:1299.47(A)(2)(a)[3] controlling, the court concluded suit against Dr. Young was barred by prescription.
The alleged malpractice occurred on May 23, 2000 and a timely medical review panel proceeding was filed against Dr. Young and LGMC, joint tortfeasors, on August 14, 2000. The medical review panel proceedings extended for a period of two years following the alleged date of malpractice. During the pendency of the proceedings, the prescription was suspended. The Plaintiffs were notified of the medical review panel decision on January 22, 2002. Accordingly, we find under La. R.S. 40:1299.47(A)(2)(a), Plaintiffs had until January 29, 2003, to bring Dr. Young, who had been previously named in the medical review panel, into the suit. Their attempt to bring him into the suit on March 15, 2005 was well beyond the time period designated by the statute.
Borel, 06-352, 06-353 at pp. 16-17, 947 So.2d at 835.
The seminal issue raised by this writ is whether the three-year time limitation contained in La.Rev.Stat. § 9:5628 is prescriptive and, therefore, susceptible to interruption as the plaintiffs suggest, or peremptive.

LAW AND ANALYSIS
Actions for medical malpractice against certain health care providers, such as the defendant physician herein, are governed by special legislation. LeBreton v. Rabito, 97-2221, p. 7 (La.7/8/98), 714 So.2d 1226, 1229. La.Rev.Stat. § 9:5628 delineates the time limitations applicable to the filing of actions for medical malpractice in district court:
No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
*48 In sum, the statute provides that suit must be brought within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of same. With respect to the latter, the claim shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect. Clearly, the statute sets forth more than one periodthe basic one year prescriptive period for delictual actions, coupled with the "discovery" exception of our jurisprudential doctrine of contra non valentem, and a separate and independent three-year time period for filing "at the latest." The issue in this case is whether the three-year provision is interpreted as prescriptive or peremptive. If the provision is peremptive, plaintiffs' claim against Dr. Young, filed more than three years after the alleged act of malpractice, has been extinguished, and plaintiffs' suit must be dismissed. If the provision is prescriptive, it is potentially susceptible to interruption based on the general codal provisions of La. Civ.Code art. 2324(C).
In Hebert v. Doctors Memorial Hosp., 486 So.2d 717 (La.1986), this Court held that La.Rev.Stat. § 9:5628 was in both its features a prescription statute interpreting for the first time 1975 La. Acts. No. 808, which enacted this provision. Within a year of the Hebert decision, the Legislature amended and reenacted La.Rev.Stat. § 9:5628 by passing 1987 La. Acts. No. 915. The most substantial amendments to the provisions relevant to this opinion changed the language as to the three-year period from;  "provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect" to read;  "however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect." Based on our research, this Court has never addressed the effect of the amendments and the reenactment. In this case, the court of appeal relied on Hebert without noting the change in the law.
A long line of jurisprudence holds that those who enact statutory provisions are presumed to act deliberately and with full knowledge of existing laws on the same subject, with awareness of court cases and well-established principles of statutory construction, with knowledge of the effect of their acts and a purpose in view, and that when the Legislature changes the wording of a statute, it is presumed to have intended a change in the law. State v. Louisiana Riverboat Gaming Com'n, 94-1872, 94-1914, p. 17, n. 10 (La.5/22/95), 655 So.2d 292, 301, n. 10; SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695, p. 17 (La.6/29/01), 808 So.2d 294, 305; Brown v. Texas-LA Cartage, Inc., 98-1063, p. 7 (La.12/1/98), 721 So.2d 885, 889; Louisiana Civil Service League v. Forbes, 258 La. 390, 414, 246 So.2d 800, 809 (1971). Based on these well established presumptions, we now examine and interpret the amended and reenacted provisions of La.Rev.Stat. § 9:5628.
Peremption is a period of time fixed by law for the existence of a right, and unless timely exercised, the right is extinguished upon the expiration of the peremptive period. La. Civ.Code art. 3458. Thus, peremption is a period of time, fixed by law, within which a right must be exercised or be forever lost. Guillory v. Avoyelles Ry. Co., 104 La. 11, 15, 28 So. 899, 901 (1900). Consequently, peremption may not be renounced, interrupted, or suspended. La. Civ.Code art. 3461. It may, however, be pleaded or *49 supplied by the court on its own motion at any time prior to final judgment. La. Civ.Code art. 3460.
Peremption differs from prescription in several respects. While liberative prescription merely prevents the enforcement of a right by action, it does not terminate the natural obligation; peremption, however, destroys or extinguishes the right itself. Ourso, 02-1978 at p. 4, 842 So.2d at 349; Hebert, 486 So.2d at 723; Pounds v. Schori, 377 So.2d 1195, 1198(La.1979). Public policy requires that rights to which peremptive periods attach are extinguished after passage of a specific period of time, and accordingly, nothing may interfere with the running of a peremptive period. Ourso, 02-1978 at p. 4, 842 So.2d at 349; Hebert, 486 So.2d at 723; Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291, 1298. The peremptive period may not be interrupted or suspended or renounced, and exceptions such as contra non valentem are not applicable. Ourso, 02-1978 at p. 4, 842 So.2d at 349; Hebert, 486 So.2d at 723; Reeder, 701 So.2d at 1298. On the other hand, as an inchoate right, prescription may be renounced, interrupted, or suspended, and contra non valentem applies an exception to the statutory prescriptive period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues. Ourso, 02-1978 at p. 4, 842 So.2d at 349; Hebert, 486 So.2d at 723; Reeder, 701 So.2d at 1298.
It is not always easy to determine whether a period of time fixed by law is peremptive or prescriptive, and the determination must be made in each case in light of the purpose of the rule in question and in light of whether the intent behind the rule is to bar an action or to limit the duration of a right. La. Civ.Code art. 3458, Comment (c). Thus, the pertinent question in this case becomes whether the Legislature intended the three-year provision to be prescriptive or peremptive.
This Court has also explained that the Civil Code gives no guidance on how to determine whether a particular time limitation is prescriptive or peremptive and more often than not, the language used in a particular statutory time limitation does not easily admit on its face of a conclusion as to its prescriptive or peremptive nature. Ourso, 02-1978 at pp. 4-5, 842 So.2d at 349; State v. McInnis Bros. Const., 97-0742, p. 4 (La.10/21/97), 701 So.2d 937, 940. Consequently, this Court has resorted to an exploration of the legislative intent and public policy underlying a particular time limitation, for it is primarily whether the Legislature intended a particular time period to be prescriptive or peremptive that is the deciding factor. Ourso, 02-1978 at pp. 4-5, 842 So.2d at 349; McInnis, 97-0742 at p. 4, 701 So.2d at 940. Thus, courts look to the language of the statute, the purpose behind the statute, and the public policy mitigating for or against suspension, interruption or renunciation of that time limit. Ourso, 02-1978 at p. 5, 842 So.2d at 349; McInnis, 97-0742 at p. 12, 701 So.2d at 946.
We turn now to the issue of whether La.Rev.Stat. § 9:5628 is peremptive and, therefore not susceptible of suspension, interruption, or renunciation for any reason, or prescriptive. We do so ever mindful of the jurisprudence of this Court holding that peremption is a matter to be determined by legislative intent and public policy. We begin with a search for legislative intent.
What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. State v. Williams, 00-1725, p. 13 (La.11/28/01), 800 So.2d 790, 800; La.Rev. Stat. § 24:177(B)(1). When a law is clear *50 and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the Legislature, nor shall the letter of the law be disregarded under the pretext of pursuing its spirit. La. Civ. Code art. 9; La.Rev.Stat. § 1:4; La.Code Civ. Proc. art. 5052. The plain meaning of the legislation should be conclusive. United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989); State v. Benoit, 01-2712, p. 3 (La.5/14/02), 817 So.2d 11, 13.
The plain language of La.Rev.Stat. § 9:5628 as reenacted by 1987 La. Acts No. 915 does clearly indicate the Legislature's intent that the three-year time period is peremptive, i.e., an extinguishment of the right upon lapse of a specified period of time: "No action ... shall be brought unless filed within one year ...; however, even as to claims filed within one year ... of such discovery, in all events such claims shall be filed at the latest within ... three years...."[4]See Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law §§ 10.05, 10.06, n. 12 (2006 ed.); see also, Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977, p. 6 (La.2/29/00), 758 So.2d 116, 120 (describing the time limitations contained in La.Rev. Stat. § 9:5628 as "special prescriptive and peremptive periods for malpractice actions"). The use of the word "shall," which must be interpreted as a mandatory provision, see La.Rev.Stat. § 1:3, lends further credence to this conclusion. The language used in this particular three-year statutory time limitation does easily admit on its face of a conclusion as to its peremptive nature. Therefore, the plain meaning of this legislation, which is conclusive, clearly indicates both the intent and the purpose of the Legislature in reenacting La.Rev. Stat. § 9:5628 to extinguish actions for medical malpractice after the lapse of three years from the date of the alleged act, omission, or neglect,[5]i.e., to limit the duration of the right to bring a medical malpractice claim. Accordingly, there can be no doubt from the clear and unambiguous language of the statute that it was the intent of the Legislature to set forth a precise peremptive period to govern the filing of medical malpractice suits against specific health care providers.
As to the public policy concerns underlying the enactment of La.Rev.Stat. § 9:5628, the legislative limitation on the amount of time within which an injured patient may bring a malpractice action directly responded to sharp increases in medical malpractice insurance rates that created a crisis, whether real or imagined, which carried with it the threat of curtailing health care to patients. Kandy G. Webb, Comment: Recent Medical Malpractice LegislationA First Checkup, 50 Tul.L.Rev. 655, 655 (1975-76); Hebert, 486 So.2d at 722, n. 9; see also, Maraist & Galligan, supra at §§ 21.02, 21.03. With *51 doctors unwilling to practice without reasonably priced liability insurance, the Legislature responded by adopting measures designed to rectify the situation. Webb, supra.
The most direct impact on the insurance crisis was quite possibly made by legislation like La.Rev.Stat. § 9:5628, which limited the amount of time within which to bring a medical malpractice action. Webb, supra at 672. Under La.Rev.Stat. § 9:5628, a fixed prescriptive period of short duration, one year, begins to run upon discovery of the injury; superimposed upon this, however, is a peremptive period of three years from the date of the malpractice, after which the suit is barred regardless of when discovered. Id. at 673. It was believed that lengthy periods for filing suit brought about by the discovery rule (a mechanism by which the statute of limitations commenced running only upon discovery of an injury rather than upon the malpractice being committed) had contributed to the increasing number of malpractice claims, and that, if the number of suits brought were restricted, insurance risks would be reduced and rates would decline. Hebert, 486 So.2d at 722, n. 9; Webb, supra at 673. Straining the interpretation of the three-year time limitation to provide a prescriptive period would create the same effect sought to be prevented by the enactment of the three-year limitation on the discovery rule. If the period is prescriptive, it can be interrupted, suspended, or even renounced, thus lengthening the time periods for filing suit for potentially years, increasing risks and simultaneously insurance rates. The public interest in controlling insurance costs to ensure the availability of health care for citizens does mitigate against suspension, interruption, or renunciation of the three-year time limitation in favor of certainty in the termination of causes of action and directly reducing the number of malpractice claims and ostensibly liability rates.
Considering the plain, explicit language of the statute, the obvious purpose behind the statute, and the readily apparent public policy, which mitigates against suspension, interruption, or renunciation of the time limit and in favor of certainty in terminating causes of action, we find La. Rev.Stat. § 9:5628 establishes a peremptive time period. According to plaintiffs' petition for damages, Dr. Young was allegedly negligent in the treatment of Mrs. Borel from August 18 through August 20, 1999. The date of the alleged malpractice falls within that time period, yet plaintiffs did not file suit against Dr. Young for malpractice until March 2005, over five years after the date of the alleged malpractice and almost five years after Mrs. Borel's death. Therefore, because plaintiffs' action against Dr. Young was brought over three years after the alleged act of malpractice, under La.Rev.Stat. § 9:5628, their action is extinguished by peremption.

DECREE
For the foregoing reasons, the result reached by the court of appeal is affirmed, defendants' peremptory exception is sustained, and plaintiffs' action against Dr. Young and LAMMICO is dismissed with prejudice as extinguished by peremption.
AFFIRMED.
CALOGERO, C.J., dissents and assigns reasons.
JOHNSON, J., dissents for reasons assigned by CALOGERO, C.J.
CALOGERO, Chief Justice, dissents and assigns reasons:
According to the majority decision, this case raises a "seminal" issue concerning "whether the three-year time limitation contained in La.Rev.Stat. § 9:5628 is prescriptive *52 and, therefore, susceptible to interruption as the plaintiffs suggest, or peremptive." However, that issue is not "seminal," because that exact question was definitively decided by this court more than 20 years ago. Specifically, in Hebert v. Doctors Memorial Hosp., this court found that both the one-year period and the three-year period set forth in La.Rev. Stat. § 9:5628 are prescriptive in nature. 486 So.2d 717 (La.1986).
The majority implies however that the 1987 legislative amendments to La.Rev. Stat. § 9:5628 require this court to reconsider this issue. However, the only changes to the pertinent language of La. Rev.Stat. § 9:5628 by 1987, La. Acts., No. 915 were the substitution of the word "however" for the phrase "provided, however, that" and the substitution of the word "shall" for the word "must." Thus, the amendment can not reasonably be considered to have changed the meaning of the prescriptive statute, and certainly cannot be considered to have changed the character of the provision from a prescriptive statute to a preemptive statute. Further, nothing in 1987, La. Acts., No. 915, indicates that the legislature intended to overrule this court's decision in Hebert. In fact, the primary changes made by the act were unrelated to the prescriptive provision. The primary change was the addition of "psychologists" as health-care providers covered by the Medical Malpractice Act, and that addition was later deleted from the statute.
Further, during the 20-year period between the 1987 amendments and this decision, this court has continued to rely on the holding in Hebert and has never even suggested that the 1987 amendment might have changed the law in any way. In fact, as recently as 2003, this court reaffirmed Hebert in State Board of Ethics v. Ourso, 02-1978, p. 4 (La.4/9/03), 842 So.2d 346, 349. During the same year, this court held in David v. Our Lady of the Lake Hosp., Inc., that the "three-year limitation is prescriptive, not peremptive." 02-2675, p. 2, n. 1 (La.7/2/03), 849 So.2d 38, 41, 02-1978 n. 1; 842 So.2d at 349 n. 1. Other cases from this court that discussed and/or applied Hebert include Naquin v. Lafayette City-Parish Consol. Gov't., 06-2227 (La.2/22/07), 950 So.2d 657, 668; Bailey v. Khoury, 04-0620, pp. 9-10 (La.1/20/05), 891 So.2d 1268, 1275; State Bd. of Ethics v. Ourso, 02-1978, p. 4 (La.4/9/03), 842 So.2d 346, 349; Campo v. Correa, 01-2707, p. 8 (La.6/21/02), 828 So.2d 502, 508; Boutte v. Jefferson Parish Hosp. Serv. Dist. No. 1, 99-2402, p. 4 (La.4/11/00), 759 So.2d 45, 49; Reeder v. North, 97-0239, p. 9, n. 3 (La.10/21/97), 701 So.2d 1291, 1297, n. 3; Whitnell v. Silverman, 95-0112, p. 6 (La.12/6/96), 686 So.2d 23, 27; Taylor v. Giddens, 618 So.2d 834, 842 (La.1993); Whitnell v. Menville, 540 So.2d 304, 309 (La.1989); Plaquemines Parish Com'n Council v. Delta Development Co., Inc., 502 So.2d 1034, 1055 (La.1987); Crier v. Whitecloud, 496 So.2d 305, 307 (La.1986).
Despite this long line of cases discussing and applying Hebert, the majority chooses now to revisit the issue, and justifies that decision by stating that "this Court has never addressed the effect of the amendments and the reenactment." Borel v. Young, 07-0419, p. 7, 989 So.2d 42, 48. The reason that this court has never addressed the amendments and the reenactment is that the minor changes to the prescriptive provision made by the 1987 amendments were not intended to change the law.
Further, the majority decision herein ignores the well-settled principle that provisions of the Medical Malpractice Act must be strictly construed because they grant immunities or advantages to special classes in derogation of the general rights available *53 to tort victims. Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210, 1216. It also ignores the fact that "prescriptive statutes must be strictly construed against prescription and in favor of the obligation sought to be extinguished, with the effect that, of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted". Lima v. Schmidt, 595 So.2d 624, 629 (La. 1992).
Finally, I would note that this case involves exactly the type of factual situation where interruption of prescription is appropriate. This court has stated that "when a petition notifies a defendant that legal demands are made for a particular occurrence, prescription is interrupted." Parker v. Southern American Ins. Co., 590 So.2d 55, 56 (La.1991). In this case, Dr. Young received notice of plaintiffs' claims against him when he was named in the plaintiffs' request for a medical review panel. Thus, the medical malpractice action later filed against him was hardly a surprise.
I would reverse the decision of the court of appeal, deny the defendant's exception of prescription, and remand to the district court for further proceedings. Thus, I dissent from the majority's decision affirming the court of appeal.

On Rehearing
WEIMER, Justice.
This court granted plaintiffs' application for rehearing because of concern about the correctness of the conclusion that the amendment and re-enactment of LSA-R.S. 9:5628 by 1987 La. Acts No. 915, § 1 effected a substantive change in the statute, transforming the three-year limitation period set forth therein from a prescriptive period to one of peremption. The determination in the original opinion that the three-year time period in LSA-R.S. 9:5628 is peremptive is based on an interpretation of 1987 La. Acts No. 915, § 1, which changed the language as to the three-year period from "provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect" to read "however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect." It was reasoned that this change in language indicated an intent to change the law and, accordingly, to express the Legislature's intent that the three-year time period be peremptive. Borel v. Young, 989 So.2d at 47-48.
In their application for rehearing, plaintiffs challenged the holding that the three-year period set forth in LSA-R.S. 9:5628 is peremptive, contending that the changes effected to the statute by 1987 La. Acts No. 915, § 1 were stylistic changes that did not change the character of the three-year limitations period as a prescriptive period. Plaintiffs argued that nothing in the 1987 Act indicated an intent to legislatively overrule this court's decision in Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La.1986), which held that both the one-year and three-year periods set forth in LSA-R.S. 9:5628 are prescriptive periods. Further, they pointed out that the peremption issue was not briefed by the parties, who, as did the court of appeal, relied on Hebert as the settled law on this issue. Accordingly, they requested an opportunity to address the continued viability of Hebert in this court.
Following a careful review of our original decision in this case, in light of the parties' supplemental arguments on rehearing, we reinstate our original judgment *54 affirming the decision of the court of appeal; however, we do so on different grounds. On rehearing, we find, contrary to our original decision, that 1987 La. Acts. No. 915, § 1 did not change the character of the three-year limitation period in LSA-R.S. 9:5628 from a prescriptive period to one of peremption. We therefore reaffirm our holding in Hebert that both the one-year and the three-year periods set forth in LSA-R.S. 9:5628 are prescriptive. However, we also find, consistent with our opinion in LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, that the more specific provisions of the Medical Malpractice Act regarding suspension of prescription against joint tortfeasors apply in this case to the exclusion of the general code articles on interruption of prescription against joint tortfeasors, and in particular LSA-C.C. art. 2324(C). As a result, we hold that plaintiffs' suit against Dr. Young and his insurer, filed well beyond the time period designated by LSA-R.S. 40:1299.47(A)(2)(a), is barred by prescription.

FACTS AND PROCEDURAL HISTORY
In April 1999, an ultrasound disclosed the presence of a mass in the left lower abdomen of Mary Borel. Mrs. Borel's internist, Dr. Clinton Young, referred her to Dr. Aldy Castor, an OB/GYN, for surgical evaluation. Dr. Castor recommended surgery. Mrs. Borel was admitted to Lafayette General Medical Center ("LGMC") on August 18, 1999. The following day, August 19, 1999, Dr. Castor performed a left ovarian cystectomy and appendectomy. Mrs. Borel tolerated the procedure well, but her condition began to deteriorate rapidly the next day. By late afternoon, August 20, 1999, Mrs. Borel's oxygen saturation had dropped, her pulse was elevated, and her temperature had spiked to 103.8 degrees. She was moved to ICU, intubated and placed on a ventilator.
Mrs. Borel was diagnosed with congestive heart failure of unknown cause. On August 21, 1999, Drs. Castor and Kinchen performed an exploratory laparotomy for possible pelvic abscess. Mrs. Borel was placed on antibiotics, and Dr. Gary Guidry was consulted for pulmonary management. Her condition did not improve. On August 25, 1999, after developing multi-organ failure, Mrs. Borel was returned to surgery. Thereafter, she remained on antibiotic therapy, but continued to have difficulty oxygenating and remained unresponsive. On October 15, 1999, she was transferred to St. Brendan's Long Term Care Facility, where she remained until her death on May 23, 2000.
On August 14, 2000, Minos Borel, Mrs. Borel's husband, and their adult children filed a medical malpractice claim with the Patient Compensation Fund against Dr. Young, Dr. Castor, and LGMC. On January 17, 2002, the medical review panel rendered an opinion finding no breach in the standard of care by Dr. Young, Dr. Castor, or LGMC. Plaintiffs received the opinion on January 22, 2002.
On March 28, 2002, plaintiffs filed suit in district court against LGMC. Neither Dr. Young nor Dr. Castor was named as a defendant. On April 24, 2002, LGMC answered the plaintiffs' petition asserting the comparative negligence or fault of parties not made defendants to the lawsuit. Two years later, in January 2004, plaintiffs learned that Dr. James Falterman would testify as an expert for LGMC. On February 17, 2005, during the course of Dr. Falterman's deposition, plaintiffs contend they discovered, for the first time, that Dr. Falterman would testify that Drs. Young and Castor's treatment of Mrs. Borel fell below the applicable standard of care. Prior to this date, plaintiffs claim they had *55 no reasonable cause to believe, from any source qualified to testify as to the standard of care required of an internist or OB/GYN, that there was negligence on the part of Dr. Young or Dr. Castor.
Plaintiffs attempted to amend their original petition to add Dr. Young, Dr. Castor, and the physicians' insurer, Louisiana Medical Mutual Insurance Company ("LAMMICO"), as defendants. When their efforts were rebuffed, they filed a separate suit for malpractice in the district court, naming Dr. Young, Dr. Castor, and LAMMICO as defendants, and alleging the joint, several and in solido liability of these defendants with LGMC. The second suit was consolidated with the pending lawsuit against LGMC.
Dr. Young and LAMMICO filed a peremptory exception of prescription. Following a hearing on August 22, 2005, the district court granted the exception, finding that plaintiffs' suit, filed in district court on March 15, 2005, more than three years from the date of the alleged malpractice, was barred by peremption, pursuant to LSA-R.S. 9:5628(A). Plaintiffs appealed.
On December 29, 2006, the Court of Appeal, Third Circuit rendered its decision. The court of appeal affirmed the decision of the district court, but for different reasons. Relying on Hebert, supra, the court determined that LSA-R.S. 9:5628(A) is prescriptive in nature, not peremptive. Examining the exception of prescription in light of LeBreton, supra, the appellate court found that the more specific provisions of the Medical Malpractice Act control the time in which suit must be filed against health care providers covered by the Act, rather than the general codal articles on interruption and suspension of prescription. Finding LSA-R.S. 40:1299.47(A)(2)(a), regarding the suspension of prescription against joint tortfeasors in the medical malpractice setting, to be controlling over the general codal article on interruption of prescription against joint tortfeasors found in LSA-C.C. 2324(C), the court of appeal concluded that plaintiffs' suit against Dr. Young is barred by prescription:
The alleged malpractice occurred on May 23, 2000, and a timely medical review proceeding was filed against Dr. Young and LGMC, joint tortfeasors, on August 14, 2000. The medical review panel proceedings extended for a period of two years following the alleged date of malpractice. During the pendency of the proceedings, the prescription was suspended. The Plaintiffs were notified of the medical review panel decision on January 22, 2002. Accordingly, we find under La. R.S. 40:1299.47(A)(2)(a), Plaintiffs had until January 29, 2003, to bring Dr. Young, who had been previously named in the medical review panel, into the suit. Their attempt to bring him into the suit on March 15, 2005, was well beyond the time period designated by the statute.
Borel v. Young, 06-0352, 06-0353, p. 16-17 (La.App. 3 Cir. 12/29/06), 947 So.2d 824, 835. On plaintiffs' application, we granted certiorari to review the correctness of the court of appeal's decision. Borel v. Young, 07-0419 (La.5/4/07), 956 So.2d 617.
On original hearing, we did not reach the issue addressed by the court of appeal-whether the specific provisions in the Medical Malpractice Act regarding suspension of prescription against joint tortfeasors apply to the exclusion of the general codal articles on interruption of prescription against joint tortfeasors found in LSA-C.C. 2324(C). Instead, we found that plaintiffs' suit was extinguished by peremption. Borel v. Young, supra., 988 So.2d 51. We granted a rehearing to consider whether the determination that the *56 three-year time limitation contained in LSA-R.S. 9:5628 is peremptive is a correct interpretation of Louisiana law.

LAW AND ANALYSIS

Prescription v. Peremption in LSA-R.S. 9:5628
In 1975, the legislature passed 1975 La. Acts No. 808, § 1, enacting La. R.S. 9:5628, a statute governing the time in which a medical malpractice action must be filed. The Act provides, in relevant part:
AN ACT
To amend Code Title XXIII of Title 9 of the Louisiana Revised Statutes of 1950 by adding thereto a new Section to be designated as Section 5628, to provide for a maximum prescriptive period and abandonment with respect to medical malpractice claims.
Be it enacted by the Legislature of Louisiana:
Section 1. Section 5628 of Title 9 of the Louisiana Revised Statutes of 1950 is hereby enacted to read as follows:
§ 5628. Actions for medical malpractice
A. No action for damages for injury or death against any physician, dentist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, ommission [sic] or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
In Hebert, supra, this court was called upon to determine whether, in passing 1975 La. Acts No. 808, § 1, the legislature intended to enact a prescriptive statute or a peremptive statute. Noting that the ultimate test for distinguishing between prescriptive and peremptive periods is the legislative intent, we pointed out that the title of the Act describes its object: "to provide for a maximum prescriptive period and abandonment with respect to medical malpractice claims" (emphasis added). Finding no other indicators to suggest that the legislature intended to deviate from this stated purpose and enact a peremptive period, this court concluded:
La.Rev.Stat. § 9:5628 sets forth more than one time period. Initially, it coincides with La. Civ.Code art. 3492's basic one year prescriptive period for delictual actions, coupled with the "discovery" exception of our jurisprudential doctrine of contra non valentem ("within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect"). A separate and independent feature, or provision, of § 9:5628 is contained in the following clause:
provided, however, that even as to claims filed within one year from the date of discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
....
When we examine the evolution of the theory of peremption and the considerations which bear on the distinction between peremption and prescription, we conclude that La.Rev.Stat. § 9:5628 is in both of its features noted above a prescription *57 statute, with only the single qualification that the discovery rule is expressly made inapplicable after three years from the act, omission or neglect.
Hebert, 486 So.2d at 723-724. Our holding in Hebert that LSA-R.S. 9:5628 is, in both of its features, a prescriptive statute, was reiterated that same year in Crier v. Whitecloud, 486 So.2d at 714, on reh'g, 496 So.2d at 307 (La.1986).
Since the date of the Hebert opinion, LSA-R.S. 9:5628 has been amended five times, each time for the primary purpose of adding to the list of healthcare practitioners included in its provisions. See, 1990 La. Acts No. 501, § 1 (adding "community blood center or tissue bank as defined in R.S. 40:1299.41(A)"); 1995 La. Acts. No. 818, § 1 (adding "optometrist"); 1995 La. Acts No. 983, § 1 (adding "nurse, licensed midwife practitioner"); 2001 La. Acts No. 95, § 1 (adding "nursing home" and present section C which extends the statute to "apply to all healthcare providers listed herein or defined in R.S. 40:1299.41 regardless of whether the healthcare provider avails itself of the protections and provisions of R.S. 40:1299.41 et seq., by fulfilling the requirements necessary to qualify as listed in R.S. 40:1299.42 and 1299.44."). Indeed, that was the primary focus of a 1987 amendment to the statute, which was enacted as part of a comprehensive bill providing for the licensure and regulation of psychologists.[1]
In addition to revising the provisions of Chapter 28 of Title 37, relative to the licensure and regulation of psychologists, 1987 La. Acts. No. 915, § 1 amended LSA-R.S. 9:5628(A) to insert the word "psychologist" after "dentist," thereby including psychologists in the enumerated list of healthcare providers covered by the provisions of LSA-R.S. 9:5628, and providing a specific limitations period for actions for damages against psychologists.
In the process of adding psychologists to the list of healthcare providers covered by LSA-R.S. 9:5628, the Act made one further change to LSA-R.S. 9:5628(A). It struck out the words "provided" and "that" in the phrase "provided, however, that" and it substituted the word "shall" for "must" in the phrase "in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect."
In our original opinion, the majority drew upon the change in language and the presumption that, where a new statute is worded differently from a preceding statute, the legislature is presumed to have intended to change the law, Brown v. Texas-LA Cartage, Inc., 98-1063, p. 7 (La.12/1/98), 721 So.2d 885, 889, to conclude that "[t]he plain language of La.Rev. *58 Stat. § 9:5628 as reenacted by 1987 La. Acts No. 915, § 1 does clearly indicate the Legislature's intent that the three-year time period is peremptive." Borel, at 50. Upon further reflection and study, we find that the interpretation of the effect of 1987 La. Acts No. 915, amending and reenacting LSA-R.S. 9:5628, was incorrect, and that the Act did not, by changing the word "must" to "shall," change the character of the three-year time period from a prescriptive period to one of peremption.
Our finding in this regard is based on several considerations. First, prior to the passage of 1987 La. Acts No. 915, § 1, the jurisprudence interpreting LSA-R.S. 9:5628 had consistently held that LSA-R.S. 9:5628 is a prescriptive statute in both its features. Hebert, 486 So.2d at 723; Crier, 486 So.2d at 714, on reh'g, 496 So.2d at 307; Chalstrom v. Desselles, 433 So.2d 866 (La.App. 4 Cir.), writ denied, 438 So.2d 215 (La.1983). According to our well-settled rules of statutory construction, we presume that the legislature was aware of the interpretation that had been given to the statute by the jurisprudence. State, Dept. of Public Safety and Corrections, Office of State Police, Riverboat Gaming Division v. Louisiana Riverboat Gaming Commission and Horseshoe Entertainment, 94-1872, 94-1914, p. 17 (La.5/22/95), 655 So.2d 292, 301 n. 10 (noting that those who enact statutory provisions are presumed to act deliberately and with full knowledge of existing laws on the same subject, with awareness of court cases and well-established principles of statutory construction, and with knowledge of the effect of their acts and a purpose in view). Yet, in the twenty-two years since the Hebert decision was issued, the only change that the legislature has effected to the relevant portion of the statute is the substitution of the word "shall" for "must" in the 1987 Act, and the deletion of the words "provided" and "that."
There is no indication in the 1987 Act that the legislature, in substituting the word "shall" for "must," intended to change the law as interpreted by this court.[2] In fact, the words, in both their ordinary and legal usage, are virtually synonymous:
Must. This word, like the word "shall," is primarily of mandatory effect; and in that sense is used in antithesis to "may."
....
Shall. As used in statutes, contracts, or the like, this word is generally imperative or mandatory. In common or ordinary parlance, and in its ordinary signification, the term "shall" is a word of command, and one which has always or which must be given a compulsory meaning; as denoting obligation. The word in ordinary usage means "must" and is inconsistent with a concept of discretion.
BLACK'S LAW DICTIONARY, 1019, 1375 (6th ed.1990). See also, Pittman Construction Co. v. Housing Authority of Opelousas, 167 F.Supp. 517 n. 38 (W.D.La.1958), aff'd, 264 F.2d 695 (5th Cir.1959) ("The word `shall' is ordinarily imperative, of similar effect and import with the word `must,' and inconsistent with the idea of discretion.").
Since the words "shall" and "must" carry virtually the same legal signification, it *59 is apparent that the amendment effected by the 1987 Act produced only a stylistic change to the statute's text: the word "must" in the phrase "in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect" was changed to "shall" to make the language consistent with that of the preceding clause: "No action for damages for injury or death ... arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect," and the words "provided" and "that" in the phrase "provided, however, that" were omitted as unnecessary surplusage. The change in language did not effect, nor was it intended to effect, a substantive change in the law.
As we explained in our original opinion, it is not always easy to determine whether a particular time limitation is prescriptive or peremptive, and the civil code gives no guidance on how to make such a determination. Borel, at 47-48. As a result, "this court has resorted to an exploration of the legislative intent and public policy underlying a particular time limitation, for it is primarily whether the legislature intended a particular time period to be prescriptive or peremptive that is the deciding factor in such a case." State, Division of Administration v. McInnis Brothers Construction, 97-0742, p. 4 (La.10/21/97), 701 So.2d 937, 940. Typically, courts look to the language of the statute, the purpose behind the statute, and the public policy mitigating for or against suspension, interruption or renunciation of that time limit to determine whether a time limitation is prescriptive or peremptive. State Board of Ethics v. Ourso, 02-1978, p. 5 (La.4/9/03), 842 So.2d 346, 349. An examination of each of these factors in the present case reveals that 1987 La. Acts No. 915, § 1, amending and re-enacting LSA-R.S. 9:5628, does not evidence a legislative intent to change the result of Hebert and make the statute's three-year period peremptive.
Because what the legislature says in the text of a statute is considered the best evidence of legislative intent, State v. Williams, 00-1725, p. 13 (La.11/28/01), 800 So.2d 790, 800, we begin with an examination of the language of LSA-R.S. 9:5628. Clearly, there is no language in LSA-R.S. 9:5628, as amended and re-enacted by 1987 La. Acts. No. 915, § 1, which indicates the legislature's intent that the three-year time period is peremptive. While we have held that it is not necessary for the legislature to state in a statute that it is peremptive in order for this court to hold that it is in fact peremptive, State Board of Ethics v. Ourso, 02-1978 at 5, 842 So.2d at 349, in some cases where this court has found a time period to be peremptive, specific language in the statute clearly indicated the legislature's intent in that regard. See, e.g., Reeder v. North, 97-0239, p. 9 (La.10/21/97), 701 So.2d 1291, 1297 ("The legal malpractice statute of limitations ... La. R.S. 9:5605 expressly states that the period is `peremptive' and `in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.'"). When the legislature wishes to enact a peremptive period, it certainly knows how to make that intention manifest. See, LSA-R.S. 9:5604, 9:5605 and 9:5606, quoted at n. 4, infra, establishing peremptive periods for actions for damages against accountants, attorneys, and insurance agents. Moreover, an examination of the statutes which, like LSA-R.S. 9:5628, establish limitation periods for negligence actions against professionals, reveals that where the legislature has chosen to enact a peremptive period, it has specifically stated its intent and, in addition, it has also *60 specially exempted claims for fraud, a characteristic which is not present in LSA-R.S. 9:5628.[3]See, e.g., LSA-R.S. 9:5605(E) ("The peremptive period provided in Subsection A of the Sections shall not apply in cases of fraud, as defined in Civil Code Article 1953.")
In our original opinion, we relied almost exclusively on the legislature's use of the word "shall" in the statute as indicative of its intent to create a peremptive period. Borel, at 50. However, if, as originally opined, the substitution of the word "shall" for "must" indicates a legislative intent to change the law and create a peremptive period, then we would be compelled to conclude that not only the three-year period, but also the one-year period, is peremptive, because the statute clearly states that "[n]o action ... shall be brought unless filed within one year." LSA-R.S. 9:5628 (emphasis added).[4] Such an *61 interpretation of LSA-R.S. 9:5628, would produce an irreconcilable conflict between the statute and the provisions of the Medical Malpractice Act, a result clearly not intended by the legislature.
The laws of statutory construction require that laws on the same subject matter be interpreted in reference to each other. LSA-C.C. art. 13; Louisiana Municipal Association v. State, 04-0227, p. 36 (La.1/19/05), 893 So.2d 809, 837. Where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter. Id.; Hollingsworth v. City of Minden, 01-2658, p. 4 (La.6/21/02), 828 So.2d 514, 517.
Louisiana Revised Statutes 9:5628 cannot be examined alone, but must be interpreted in conjunction with the provisions of the Medical Malpractice Act, codified in LSA-R.S. 40:1299.41, et seq.[5] As we explained in LeBreton, the Medical Malpractice Act prohibits the filing of a medical malpractice claim against a qualified health care provider prior to presenting the complaint to a medical review panel. The legislature, in enacting this legislation, took special cognizance of the need to fully protect plaintiffs from the detrimental effect of liberative prescription; the legislature provides for suspension of the time within which suit must be filed during the pendency of the review process and for ninety days following notification to the claimant or his or her attorney of the panel opinion. LeBreton, 97-2221 at 10, 714 So.2d at 1230-1231; LSA-R.S. 40:1299.47(A)(2)(a) and (c). Indeed, the Medical Malpractice Act is replete with provisions respecting the operation and effect of this suspension.[6] Suspension, as we *62 have explained, applies only to prescription; a peremptive period, by definition, is not subject to interruption, suspension or renunciation. LSA-C.C. art. 3461; Hebert, 486 So.2d at 723. To suggest that the language of LSA-R.S. 9:5628 and, in particular, the use of the word "shall," indicates an intent to establish a peremptive period would be to render the provisions of the Medical Malpractice Act relative to suspension meaningless, a result we cannot condone. Hollingsworth, 01-2658 at 5, 828 So.2d at 517 ("[C]ourts are bound to give effect to all parts of a statute and cannot give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided.").[7]
As to the purpose behind the statute, we find it significant, as we did in Hebert, that the title to 1987 Acts. No. 915, § 1, which amended and re-enacted LSA-R.S. 9:5628, states that its purpose is "to provide for time limitations applicable to actions for damages against psychologists." Had the Legislature intended the "time limitations" to be peremptive, it could very easily have so indicated in the title of the act. Compare, 1990 La. Acts No. 683, § 1, which states as its purpose: "To enact 9:5604 and 5605, relative to limitations of actions, to provide for liberative prescription and for peremption of actions against accountants and attorneys." It did not do so, despite its presumed knowledge of the jurisprudence construing the "time limitations" in LSA-R.S. 9:5628 as prescriptive periods.
In short, there is nothing in the language of the amended and re-enacted statute, or in the title or history of 1987 La. Acts No. 915, § 1 to indicate the legislature's intent that the three-year time period of LSA-R.S. 9:5628 be peremptive. Had the Legislature meant for the time period to be peremptive, it could have expressed its intent in the title or text of *63 the act, or in the language of the statute itself. Conerly v. State, Louisiana State Penitentiary and the Department of Corrections, 02-1852, p. 8 (La.App. 1 Cir. 6/27/03), 858 So.2d 636, 644, writ denied, 03-2121 (La.11/14/03), 858 So.2d 432. The legislature would not "hint" about peremption when it clearly knows how to specify its intention in this regard, (see and compare, LSA-R.S. 9:5628.1)[8] especially given its presumed knowledge of the jurisprudence interpreting the statute as prescriptive.
As to the public policy concerns which underlie the enactment of LSA-R.S. 9:5628, and mitigate for or against suspension, interruption, or renunciation of its time limits, Hebert explains that the statute is a prescription statute with a qualification, that is, the contra non valentem type exception to prescription embodied in the discovery rule is expressly made inapplicable after three years from the act, omission, or neglect, and that:
[t]his legislative limitation to a maximum of three years on the application of the discovery rule for a tort action involving medical malpracticethe discovery rule is an embodiment of contra non valentemwas purportedly a response to the problem of sharp increases in medical malpractice insurance rates.... It was believed that lengthy periods for filing suit brought about by the discovery rule (a mechanism by which the statute of limitations commenced running only upon discovery of an injury rather than upon perpetration of the tort) had contributed to the increasing number of malpractice claims and that, if the number of suits brought were restricted, insurance risks would be reduced and rates would decline. [Citations omitted.]
Hebert, 486 So.2d at 722 n. 9. The public interest in controlling insurance costs to ensure the availability of health care is not thwarted or undermined by creating a hybrid prescriptive statute which expressly limits application of the discovery rule in an action for medical malpractice to a maximum of three years in lieu of creating a strict peremptive period requiring that an action be commenced within three years or forever lost. Clearly, the legislature intended that some type of suspension would operate, as it made a provision for such in the Medical Malpractice Act itself, recognizing the need to fully protect plaintiffs who would otherwise suffer the detrimental effect of liberative prescription during the panel review process that is required before an action can be filed. LeBreton, 97-2221 at 10, 714 So.2d at 1230-1231; LSA-R.S. 40:1299.47(A)(2)(a). Thus, public policy mitigates in favor of some type of limited suspension such as that created in the provisions of the Medical *64 Malpractice Act.[9]
In summary, there is no indication in the language, purpose, or public policy surrounding 1987 La. Acts No. 915, § 1 of the legislature's intent to legislatively overrule this court's holding in Hebert that both the one-year and three-year periods in LSA-R.S. 9:5628 are prescriptive. The stylistic substitution of the word "shall" for "must" is simply not sufficient to indicate an intent to change the three-year period in the statute from a prescriptive period to one of peremption. With the exception of this minor change in language, all other indicators relied upon in Hebert to find the existence of a prescriptive statute remain intact: (1) peremption statutes generally create the right of action and stipulate the delay during which the right must be exercised, but LSA-R.S. 9:5628 does not create the right to file suit in a tort action; (2) peremptive statutes often involve claims of a public law nature, but a suit for damages against a health care provider is a matter of private rather than public law; and (3) peremptive periods are generally less than one year, but the period in LSA-R.S. 9:5628 is not. Hebert, 486 So.2d at 724.
As discussed earlier, LSA-R.S. 9:5628 has been amended five times since the Hebert decision. Despite ample opportunity to do so, the legislature has not sought to amend the statute to add language expressly making the three-year period peremptive, as it did when it enacted LSA-R.S. 9:5628.1, or other statutes establishing limitations periods for tort actions against various professionals. See, LSA-R.S. 5:5604, 9:5605, 9:5606. The substitution of the word "shall" for "must" in the 1987 Act is, without question, less than revealing if it was meant to reflect an intent to change the law. Mindful of the admonition that the provisions of the Medical Malpractice Act must be strictly construed because they grant immunities or advantages to special classes in derogation of the general rights available to tort victims, Kelty v. Brumfield, 93-1142, p. 9 (La.2/25/94), 633 So.2d 1210, 1216, and that prescriptive statutes must be strictly construed against prescription and in favor of the obligation sought to be extinguished, Lima v. Schmidt, 595 So.2d 624, 629 (La. 1992), we find that LSA-R.S. 9:5628, as amended and re-enacted by 1987 Acts No. 915, § 1, did not legislatively overrule our decision in Hebert, and did not establish a peremptive time period.
During the more than twenty-year period since its issuance, this court has consistently followed and endorsed the Hebert analysis and interpretation of LSA-R.S. 9:5628 as a prescriptive statute in both its features with a qualification, that is, the contra non valentem type exception to prescription embodied in the discovery rule is expressly made inapplicable after three years from the act, omission or neglect. Crier v. Whitecloud, 486 So.2d 713, on reh'g, 496 So.2d 305 (La.1986); Whitnell v. Menville, 540 So.2d 304 (La.1989); White v. West Carroll Hospital, Inc., 613 So.2d 150 (La.1992); Taylor v. Giddens, 618 So.2d 834 (La.1993); Hillman v. Akins, 93-0631 (La.1/14/94), 631 So.2d 1; Whitnell v. Silverman, 95-0112, 95-0259 (La.12/6/96), 686 So.2d 23; Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291; Campo v. Correa, 01-2702 (La.6/21/02), 828 So.2d 502; State Board of Ethics v. Ourso, 02-1978 (La.4/9/03), 842 So.2d 346; Perritt v. Dona, 02-2601, 02-2603 (La.7/2/03), 849 So.2d 56; Bailey v. *65 Khoury, 04-0620, 04-0647, 04-0684 (La.1/20/05), 891 So.2d 1268; Naquin v. Lafayette City-Parish Consolidated Government, 06-2227 (La.2/22/07), 950 So.2d 657. Once this court has ruled on an issue, we should be extremely reluctant to change our position, as both the legislature and society in general should be able to rely on the finality of our pronouncements. Stability and predictability in the law demand such a result. As this court has explained: "Fundamental and elementary principles recognize that certainty and constancy of the law are indispensable to orderly social intercourse, a sound economic climate and a stable government. Certainty is a supreme value in the civil law system to which we are heirs." Doerr v. Mobil Oil Corporation, 00-0947, p. 13 (La.12/19/00), 774 So.2d 119, 128, corrected on other grounds, 00-0947 (La.3/16/01), 782 So.2d 573, quoting Johnson v. St. Paul Mercury Insurance, Co., 256 La. 289, 296, 236 So.2d 216, 218 (1970).
Under the civilian tradition, a single decision is not binding on our courts; however, when a series of decisions form a "constant stream of uniform and homogenous rulings having the same reasoning," jurisprudence constante applies and operates with "considerable persuasive authority." James L. Dennis, Interpretation and Application of the Civil Code and the Evaluation of Judicial Precedent, 54 La.L.Rev. 1, 5 (1993); Doerr, 00-0947 at 14, 774 So.2d at 128. In this instance, the long line of cases from this court spanning twenty-two years, endorsing the Hebert interpretation of LSA-R.S. 9:5628 as prescriptive in both its features, forms jurisprudence constante, which in the absence of legislative action, or at least a more definitive statement as to the legislative intent, should be respected by this court.
Accordingly, we find that we erred in our original opinion in concluding that LSA-R.S. 9:5628 establishes a peremptive time period and that plaintiffs' action against Dr. Young, filed over three years after the alleged act of malpractice, is extinguished by peremption.

Prescription  Medical Malpractice Act v. Civil Code Articles on Interruption of Prescription
The finding that plaintiffs' suit is not barred by peremption does not end our inquiry. We must next consider the issue that was pretermitted by our opinion on original hearing: whether the court of appeal erred in relying on our decision in LeBreton supra, to find that plaintiffs' action against Dr. Young has prescribed. For the following reasons, we find that the court of appeal did not err.
Mrs. Borel died on May 23, 2000. On August 14, 2000, plaintiffs filed a malpractice complaint with the Patient Compensation Fund against Dr. Young, Dr. Castor, and LGMC, thereby satisfying the requirements of LSA-R.S. 40:1299.47(B)(1)(a)(i).[10] This timely request for a medical review panel suspended prescription until ninety days following notification of the panel's issuance of an opinion. LSA-R.S. 40:1299.47(A)(2)(a). Plaintiffs were notified of the panel's opinion on January 22, 2002. Within ninety days of that notification, plaintiffs filed suit in district court against LGMC, an alleged joint tortfeasor.
On appeal, plaintiffs asserted that the timely filed suit against LGMC interrupted prescription as to Dr. Young, a joint tortfeasor, *66 pursuant to the provisions of LSA-C.C. art. 2324(C),[11] and this court's decision in Hebert, which, in holding that LSA-R.S. 9:5628 is a prescription statute, relied upon the general Civil Code articles regarding interruption of prescription to find that a timely filed suit against a solidary obligor interrupts the prescription set forth in LSA-R.S. 9:5628. Hebert, 486 So.2d at 725.
The court of appeal rejected plaintiffs' argument, finding that this court's decision in LeBreton "clearly overruled the prior jurisprudence which applied the general provisions on interruption of prescription to a medical malpractice case and held the more specific provision found in the MMA controls the time in which suit must be filed against health care providers covered by the Act." Borel, 06-0352 at 9, 947 So.2d at 830. Plaintiffs dispute this finding, arguing that LeBreton is limited to its unique facts and was never intended to interfere with the line of jurisprudence, pre-dating its issuance, permitting the addition of a solidary obligor to a pending, timely filed lawsuit, even if the addition occurred more than three years from the date of the alleged medical malpractice.
Plaintiffs are correct in their assertion that LeBreton does not present the exact factual scenario presented here. LeBreton addressed the effect of filing a medical malpractice suit in district court before submitting the claim to a medical review panel, as required by LSA-R. S. 40:1299.47(B)(1)(a)(i). Prior to LeBreton, a medical malpractice plaintiff could interrupt prescription by filing suit in district court against a health care provider within one year of the malpractice. The defendant would typically respond by filing an exception of prematurity seeking dismissal of the lawsuit for the plaintiff's failure to first file a request for a medical review panel. The plaintiff would then file a complaint with the Patient Compensation Fund. Following the rendition of the panel decision, prescription would commence to run anew, thereby allowing plaintiff as much as an additional year within which to file suit in district court.
LeBreton specifically addressed, and sought to rectify, the "anachronistic benefit" afforded to those litigants who, in failing to follow the proper procedural sequence in medical malpractice litigation, were able to simultaneously utilize the civil code articles on interruption of prescription with the specific provisions regarding suspension of prescription found in LSA-R.S. 40:1299.47(A)(2)(a) of the Medical Malpractice Act to prolong their malpractice claim. LeBreton, 97-2221 at 11, 714 So.2d at 1231. Nevertheless, in analyzing the interplay between the general codal articles on interruption of prescription and the statutes specifically providing for suspension of prescription in the context of the Medical Malpractice Act, this court set forth general principles applicable to all actions brought pursuant to the Act.
In LeBreton, we pointed out that actions for medical malpractice against certain health care providers, such as defendants herein, are governed by special laws which delineate the applicable liberative prescription. Relying on the rules of statutory construction, we pointed out that although statutes dealing with the same subject matter should be harmonized if possible, where there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. LeBreton, 97-2221 *67 at 7; 714 So.2d at 1229. We further recognized that, in the civil law, suspension exists as an equalizer to litigants who find themselves in situations where interruption of prescription is not available, and that, by including special provisions regarding suspension of prescription in the medical malpractice statutes, the legislature excluded the applicability of interruption of prescription. LeBreton, 97-2221 at 9-10, 714 So.2d at 1230. We reasoned:
[I]t is evident that the Louisiana Medical Malpractice Act took cognizance of the need to suspend prescription and fully protects plaintiffs who would otherwise suffer the detrimental effect of liberative prescription. Because the Medical Malpractice Act prohibits the filing of a medical malpractice claim against a qualified health care provider prior to panel review, the act specifies that the filing of a request for review before a panel suspends prescription. La. R.S. 40:1299.47(A)(2)(a). Moreover, as provided by statute, the filing of the complaint prevents prescription from lapsing during the pendency of the review process and further suspends prescription from the time of filing until ninety-days following notification to the claimant or his attorney of the panel opinion. Id. After reviewing these special provisions, it is clear that the legislature has equitably provided for suspension to aid the plaintiff in the medical malpractice arena who is prevented by law from the outset from filing suit against the qualified health care provider.... Thus, considering the doctrinal underpinnings for the existence of the rules of suspension, it is evident that there is no need for the general rules of interruption of prescription to combine with suspension to synergistically benefit the plaintiff.
LeBreton, 97-2221 at 10, 714 So.2d at 1230-1231 (footnote omitted). Although issued in the context of a case presenting itself in a different factual and procedural posture from the instant one, our holding in LeBreton clearly stands for the principle that medical malpractice claims are governed by the specific provisions of the Medical Malpractice Act regarding suspension of prescription, to the exclusion of the general codal articles on interruption of prescription. That holding is broad enough to extend to the instant case.
In fact, jurisprudence subsequent to LeBreton has applied its principles to joint tortfeasor situations, such as presented in this case. Richard v. Tenet Health Systems, Inc., 03-1933(La. App. 4 Cir. 4/14/04), 871 So.2d 671, writ denied, 04-1521 (La.10/29/04), 885 So.2d 587. In Richard, the court of appeal addressed the issue of whether a timely filed suit against one health care provider interrupted prescription as to other health care providers, not previously named in the panel request, who were alleged to be jointly liable with the named defendants. In answering this inquiry in the negative, the court of appeal applied the principles articulated in LeBreton to conclude that the specific provisions of the Medical Malpractice Act applied to the exclusion of the general code articles on interruption of prescription. The court expressly rejected any reliance on Hebert for the proposition that the general civil code articles on interruption of prescription apply in the medical malpractice setting, finding that Hebert was decided before LeBreton, which effectively "changed the way courts analyze prescription issues in medical malpractice cases." Richard, 03-1933 at 3, 871 So.2d at 673 n. 1. The appellate court explained: "LeBreton and the cases following it recognize that the legislature has established special rules for prescription under the Medical Malpractice Act. Consequently, the general rules of prescription do not *68 apply." Id. Accordingly, the court held that the initial request for a medical review panel suspended prescription as to the health care providers alleged to be joint tortfeasors and/or solidary obligors with the named health care providers; however, pursuant to LSA-R.S. 40:1299.41(G) and LSA-R.S. 40:1299.47(A)(2)(a), that prescription was suspended for only 90 days following notification, by certified mail, of the issuance of the medical review panel's opinion. Plaintiffs waited for over five years after the opinion of the medical review panel to name as additional defendants those previously unnamed health care providers who were alleged to be joint and/or solidary obligors. Therefore, the court found that plaintiffs' claim as to these defendants had prescribed.
The reasoning applied by the appellate court in Richard applies with equal force to this case, in which plaintiffs sought to add Dr. Young, an alleged joint tortfeasor, to a pending medical malpractice action more than 90 days after the receipt of the medical review panel's decision finding that his conduct did not fall below the applicable standard of care and more than three years from the date of the alleged malpractice. Pursuant to LeBreton, and the cases following it, the specific provisions of the Medical Malpractice Act regarding the suspension of prescription against joint tortfeasors apply to the exclusion of the general code article on interruption of prescription against joint tortfeasors, LSA-C.C. 2324(C).[12] The specific provisions of the Medical Malpractice Act are found in LSA-R.S. 40:1299.41(G) and LSA-R.S. 40:1299.47(A)(2)(a).
Louisiana Revised Statutes 40:1299.41(G) states:
Notwithstanding the provisions of Subsection D, the running of prescription against a health care provider who is answerable in solido with a qualified health care provider against whom a claim has been filed for review under this Part shall be suspended in accordance with the provisions of R.S. 40:1299.47(A)(2)(a).
Louisiana Revised Statutes 40:1299.47(A)(2)(a) provides, in relevant part:
The filing of the request for a review of a claim shall suspend the time within suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until ninety days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part. The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties *69 that are the subject of the request for review.
Applying these provisions to the facts of the instant case, it becomes apparent that plaintiffs' claims against Dr. Young were properly dismissed. The alleged malpractice occurred on May 23, 2000. On August 14, 2000, a request for a medical review panel was filed against Dr. Young, Dr. Castor and LGMC, as joint tortfeasors. During the pendency of the panel proceedings, prescription was suspended as to all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified. Plaintiffs were notified of the medical review panel decision on January 22, 2002. Thereafter, they had 90 days, plus the remainder of the one-year prescriptive period that was unused at the time the request for a medical review panel was filed (282 days), or until January 29, 2003,[13] to bring Dr. Young, who had been previously named in the medical review panel, into the suit.[14] Their attempt to bring him into the lawsuit on March 15, 2005, came too late. The district court correctly sustained the peremptory exception of prescription.

CONCLUSION
In conclusion, for the reasons expressed, we find that 1987 Acts No. 915, § 1 did not change the character of the three-year limitation period in LSA-R.S. 9:5628 from a prescriptive period to one of peremption. We therefore reaffirm our holding in Hebert that both the one-year and three-year periods set forth in LSA-R.S. 9:5628 are prescriptive, with the qualification that the contra non valentem type exception to prescription embodied in the discovery rule is expressly made inapplicable after three years from the act, omission, or neglect.
We additionally find that the rule of LeBreton extends to this case, and that the more specific provisions of the Medical Malpractice Act regarding suspension of prescription against joint tortfeasors apply to the exclusion of the general code article on interruption of prescription against joint tortfeasors, LSA-C.C. art. 2324(C). Applying those provisions to the facts of this case, we find that plaintiffs' suit against Dr. Young and his insurer, filed well beyond the time period designated by LSA-R.S. 40:1299.47(A)(2)(a), is barred by prescription. The judgment of the court of appeal is affirmed.
AFFIRMED.
CALOGERO, C.J., concurs in part, dissents in part and assigns reasons on rehearing.
*70 Johnson, J., dissents on rehearing.
TRAYLOR, J., concurs with reasons in the result only on rehearing.
KNOLL, J., concurs in result only and assigns reasons on rehearing.
CALOGERO, Chief Justice, concurring in part and dissenting in part and assigning reasons.
I concur in the majority's decision on rehearing to reaffirm this court's decision in Hebert v. Doctors Memorial Hosp., 486 So.2d 717 (La.1986), which held that both the one-year period and the three-year period of limitation set forth in La.Rev. Stat. 9:5628 are prescriptive in nature, as opposed to peremptive. Clearly, the 1987 legislative amendments to La.Rev.Stat. 9:5628 were not intended to change the law. Further, the majority correctly finds that jurisprudence constante prompts respect for the conclusion in Hebert that the three-year period is prescriptive in nature, as numerous cases from this court have recognized.
However, regarding the majority's decision to apply the court's decision in LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, to find that the plaintiffs' claims against the physicians herein are prescribed, I respectfully dissent, just as I dissented in LeBreton. I have consistently expressed my disagreement with the majority's decision in that case. But, more importantly, this case involves a significant extension of the result in LeBreton to a heretofore unaffected fact situation. While I disagree with LeBreton and would prefer to see it overruled, I certainly do not agree that its holding should be extended beyond the facts of that case. I would find that prescription against the physicians was interrupted when plaintiff timely filed suit against the hospital. Thus, I dissent from the majority's decision and would reverse the court of appeal decision.
TRAYLOR, Justice, concurring in result.
I agree with the result reached by the majority in this case that plaintiffs' suit against Dr. Young and his insurer, filed well beyond the period designated by La. R.S. 9:5628, is time barred. However, unlike the majority, I believe that plaintiffs' suit is time barred because the three-year period of La. R.S. 9:5628 is peremptive and that Hebert v. Doctors Memorial Hosp., 486 So.2d 717 (La.1986) was wrongly decided and should be overruled. However, the majority's recognition that (1) the contra non valentum type exception to prescription embodied in the discovery rule is expressly made inapplicable after three years from the act, omission, or neglect, and (2) the rule of LeBreton v. Rabito, 1997-2221 (La.7/8/98), 714 So.2d 1226, extends to this case, such that the more specific provisions of the Medical Malpractice Act regarding suspension of prescription of joint tortfeasors apply to the exclusion of the general code articles on interruption of prescription against joint tortfeasors, makes my disagreement with the majority's reasoning irrelevant as the result is the same under either interpretation. Therefore, I respectfully concur.
KNOLL, Justice, concurring.
The plurality opinion on rehearing reinstates the result reached by the majority on original hearing, but on different grounds. The plurality opinion concludes the 1987 amendments and reenactment of La.Rev.Stat. § 9:5628 did not substantively change the law and reaffirms the Hebert v. Doctors Memorial Hosp., 486 So.2d 717 (La.1986) interpretation of the three-year provision as prescriptive, but finds that *71 under LeBreton v. Rabito, 97-2221(La.7/8/98), 714 So.2d 1226, plaintiffs' action has prescribed. With all due respect, I concur in the result only, dismissing plaintiffs' suit. I find the plaintiffs' action is perempted by the clear language of La.Rev.Stat. § 9:5628, as stated by the majority on original hearing, and for additional reasons assigned herein.
The seminal issue raised by this writ is whether the three-year time limitation contained in La.Rev.Stat. § 9:5628 is prescriptive and, therefore, susceptible to interruption as the plaintiffs suggest, or peremptive. The correct disposition of this issue turns on well-established statutory interpretation.
In Hebert v. Doctors Memorial Hosp., 486 So.2d 717 (La.1986), as reaffirmed by the plurality opinion on rehearing, this Court held that La.Rev.Stat. § 9:5628 was in both its features a prescription statute interpreting for the first time 1975 La. Acts No. 808, which enacted this provision. Within a year of the Hebert decision, the Legislature amended and reenacted La. Rev.Stat. § 9:5628 by passing 1987 La. Acts No. 915. The most substantial amendments to the provisions relevant to this opinion changed the language as to the three-year period from  ";provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect"  to read  ";however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect."
A long line of jurisprudence holds that those who enact statutory provisions are presumed to act deliberately and with full knowledge of existing laws on the same subject, with awareness of court cases and well-established principles of statutory construction, with knowledge of the effect of their acts and a purpose in view, and that when the Legislature changes the wording of a statute, it is presumed to have intended a change in the law. State v. Louisiana Riverboat Gaming Com'n, 94-1872, 94-1914, p. 17, n. 10 (La.5/22/95), 655 So.2d 292, 301, n. 10; SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695, p. 17 (La.6/29/01), 808 So.2d 294, 305; Brown v. Texas-LA Cartage, Inc., 98-1063, p. 7 (La.12/1/98), 721 So.2d 885, 889; Louisiana Civil Service League v. Forbes, 258 La. 390, 414, 246 So.2d 800, 809 (1971). Although the plurality opinion disregards this well-established rule of statutory interpretation, I find an examination and interpretation of the amended and reenacted provisions of La.Rev.Stat. § 9:5628 must be directed by these presumptions.
What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. State v. Williams, 00-1725, p. 13 (La.11/28/01), 800 So.2d 790, 800; La.Rev.Stat. § 24:177(B)(1). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the Legislature, nor shall the letter of the law be disregarded under the pretext of pursuing its spirit. La. Civ. Code art. 9; La.Rev.Stat. § 1:4; La.Code Civ. Proc. art. 5052. The plain meaning of the legislation should be conclusive. United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989); State v. Benoit, 01-2712, p. 3 (La.5/14/02), 817 So.2d 11, 13.
Despite the plurality opinion's assertion to the contrary, the plain language of La. Rev.Stat. § 9:5628 as reenacted by 1987 *72 La. Acts No. 915 does clearly indicate the Legislature's intent that the three-year time period is peremptive, i.e., an extinguishment of the right upon lapse of a specified period of time: "No action ... shall be brought unless filed within one year ...; however, even as to claims filed within one year ... of such discovery, in all events such claims shall be filed at the latest within ... three years...."[1]See Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law §§ 10.05, 10.06, n. 12 (2006 ed.); see also, Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977, p. 6 (La.2/29/00), 758 So.2d 116, 120 (describing the time limitations contained in La.Rev.Stat. § 9:5628 as "special prescriptive and peremptive periods for malpractice actions"). The use of the word "shall," which must be interpreted as a mandatory provision, see La.Rev.Stat. § 1:3, lends further credence to this conclusion. The language as defined by our statutory provisions[2] used in this particular three-year statutory time limitation does easily admit on its face a conclusion as to its peremptive nature. Therefore, the plain meaning of this legislation, which is conclusive, clearly indicates both the intent and the purpose of the Legislature in reenacting La.Rev.Stat. § 9:5628 to extinguish actions for medical malpractice after the lapse of three years from the date of the alleged act, omission, or neglect,[3]i.e., to limit the duration of the right to bring a medical malpractice claim. Accordingly, there can be no doubt from the clear and unambiguous language of the statute that it was the intent of the Legislature to set forth a precise peremptive period to govern the filing of medical malpractice suits against specific health care providers.
Moreover, the plurality opinion claims that this interpretation of the language, particularly the term "shall," in the three-year provision as peremptive would compel an interpretation of the one-year provision as peremptive. This claim lacks merit. The words and phrases of a law shall be read with their context and the text of the law as a whole. La.Rev.Stat. § 1:3; La. Civ.Code art. 11. Peremption by its definition cannot be interrupted, yet the one-year provision read in context is subject to interruption by the discovery rule. Therefore, the one-year provision must be prescriptive. Significantly, under the terms of the statute, the discovery rule cannot toll the running of the three-year provision, which further supports the interpretation of its provisions as peremptive and, by default, insusceptible to interruption. Furthermore the "cut off" language contained in the three-year provision, i.e., "at the latest," but not contained in the one-year *73 provision, read in conjunction with the words "shall be filed" lends additional support to the correct statutory interpretation that the three-year provision sets forth the specific time period upon the lapse of which the right of action extinguishes.
The plurality opinion also fails to acknowledge that the Legislature did not need to amend the language in the three-year provision to add psychologists to the list of enumerated health care providers, nor does the plurality opinion explain why the Legislature made such an amendment. Rather, in disregard of the rules of statutory interpretation, the plurality opinion dismisses the amendments to the time limitation provisions as insignificant and non-substantive. I believe this is error.
The plurality opinion further asserts that the Legislature's omission of a fraud exception in the provisions supports its interpretation of the provisions as prescriptive. I recognize this omission as an inadvertence on the part of the Legislature because the Legislature would no more want to disallow an exception for fraud, than we should want to perpetuate error in the interpretation of its provisions.
As explained in the majority opinion on original hearing regarding the public policy concerns underlying the enactment of La.Rev.Stat. § 9:5628, the legislative limitation on the amount of time within which an injured patient may bring a malpractice action directly responded to sharp increases in medical malpractice insurance rates that created a crisis, whether real or imagined, which carried with it the threat of curtailing health care to patients. Kandy G. Webb, Comment: Recent Medical Malpractice Legislation  A First Checkup, 50 Tul.L.Rev. 655, 655 (1975-76); Hebert, 486 So.2d at 722, n. 9; see also, Maraist & Galligan, supra at §§ 21.02, 21.03. With doctors unwilling to practice without reasonably priced liability insurance, the Legislature responded by adopting measures designed to rectify the situation. Webb, supra.
The most direct impact on the insurance crisis was quite possibly made by legislation like La.Rev.Stat. § 9:5628, which limited the amount of time within which to bring a medical malpractice action. Webb, supra at 672. Under La.Rev.Stat. § 9:5628, a fixed prescriptive period of short duration, one year, begins to run upon discovery of the injury; superimposed upon this, however, is a peremptive period of three years from the date of the malpractice, after which the suit is barred regardless of when discovered. Id. at 673. It was believed that lengthy periods for filing suit brought about by the discovery rule (a mechanism by which the statute of limitations commenced running only upon discovery of an injury rather than upon the malpractice being committed) had contributed to the increasing number of malpractice claims, and that, if the number of suits brought were restricted, insurance risks would be reduced and rates would decline. Hebert, 486 So.2d at 722, n. 9; Webb, supra at 673. Straining the interpretation of the three-year time limitation to provide a prescriptive period would create the same effect sought to be prevented by the enactment of the three-year limitation on the discovery rule. If the period is prescriptive, it can be interrupted, suspended, or even renounced, thus lengthening the time periods for filing suit for potentially years, increasing risks and simultaneously insurance rates. The public interest in controlling insurance costs to ensure the availability of health care for citizens does mitigate against suspension, interruption, or renunciation of the three-year time limitation in favor of certainty in the termination of causes of action and *74 directly reducing the number of malpractice claims and ostensibly liability rates.
Considering the plain, explicit language of the statute, the obvious purpose behind the statute, and the readily apparent public policy, which mitigates against suspension, interruption, or renunciation of the time limit and in favor of certainty in terminating causes of action, I find La. Rev.Stat. § 9:5628 establishes a peremptive time period. Because plaintiffs' action against Dr. Young was brought over three years after the alleged act of malpractice, under La.Rev.Stat. § 9:5628, their action is extinguished by peremption. For these reasons, I would affirm the judgment of the majority of this Court on original hearing.
Moreover, upon further study and reflection, I also find that Hebert should be overruled. In Hebert, this Court held that La.Rev.Stat. § 9:5628 is in both of its features a prescription statute. In reaching this conclusion, this Court looked to several indicators (structural considerations). First, the Court examined the title of 1975 La. Acts 808 enacting this provision, which stated that the purpose of the act is to establish a new section to provide for a "maximum prescriptive period" with regard to medical malpractice claims, as indicative of the Legislature's purpose in enacting the particular limitation periods. Second, the Court noted that peremption statutes generally create the right of action and stipulate the delay during which the right may be exercised, and the right of action at issue long preceded the enactment of La.Rev.Stat. § 9:5628.[4] Third, the Court looked for the existence of a claim of a public law nature and a period of less than one year, and La.Rev.Stat. § 9:5628 qualified on neither score. The Court did note that the defendant's strongest argument in support of peremption was that the language of the statute suggests that peremption is intended, an extinguishment of the right upon lapse of a period of time. The Court found, however, that not one case in the jurisprudence considering the distinction between prescription and peremption has accentuated the language used in a given statute as determinative of which was intended, and had the legislature meant it to be peremptive it could have so entitled that act rather than calling it "a prescriptive period." Notably, this reasoning conflicts with La. Civ.Code art. 9 and La.Rev.Stat. §§ 1:3 & 4 on the interpretation of laws. Also, the title to the 1975 Act stated the purpose of the act was to establish a new section to provide a maximum prescriptive period and abandonment with respect to medical malpractice claims. The term abandonment seems indicative of extinguishment along the lines advanced by the defendant in Hebert. Further, "maximum prescriptive period" suggests the strictest limit available, i.e., peremption, and the closest parallel to peremption in French law is called "strict prescription." Also, the Legislature did not officially adopt peremption into the code until 1982 and may have been hesitant to use the term when the statute was written.
*75 Then, in 1987, within a year of the Hebert decision, the Legislature amends and reenacts La.Rev.Stat. § 9:5628 in an act that dealt primarily with psychologists. The original version of 1987 La. Acts 915 did not contain any amendments to La. Rev.Stat. § 9:5628. The amendments and reenactment first appear in the engrossed version of the bill, and the legislative history of the act reveals the amendments and reenactment were proposed by the House Committee on Health and Welfare to include psychologists in the list of enumerated persons against whom actions for damages arising out of patient care must be brought within the stated time limits and changed the language as to the three-year period from  ";provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect " to read  ";however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect."
Based on my research, this Court, prior to our ruling on original hearing, had never addressed the effect of the amendments and the reenactment, even though this Court had continued to rely on Hebert and even in a footnote in David v. Our Lady of the Lake Hosp., Inc., 02-2675 (La.7/2/03), 849 So.2d 38, stated that the "three-year limitation is prescriptive, not peremptive, citing Hebert, as reaffirmed in State Bd. of Ethics v. Ourso, 02-1978, p. 4 (La.4/9/03), 842 So.2d 346, 349." Ourso, however, did not address the amendments or reenactment of La.Rev.Stat. § 9:5628, but rather affirmed Hebert's analysis of the 1975 Act. Also, not relying on Hebert, this Court in Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977, p. 6 (La.2/29/00), 758 So.2d 116, 120, describes the time limitations contained in La. R.S. 9:5628 as "special prescriptive and peremptive periods for malpractice actions."
Yet, the plurality opinion asserts that for more than twenty years this Court has consistently followed and endorsed the holding in Hebert and forms jurisprudence constante. This assertion is misleading and in my view wrong because it does not take into consideration the holding in Spradlin that the three-year provision is peremptive and its effect on this so-called formation of jurisprudence constante. Most notably, this Court's reliance on, discussion of, or citing to Hebert or its three-year prescriptive period analysis has either been in obiter dicta in cases where the three-year provision did not come into play and the discussion of which was not necessary to the resolution of the issues, Perritt v. Dona, 02-2601, p. 15 (La.7/2/03), 849 So.2d 56, 66 (medical malpractice case involving the propounding of interrogatories and exceptions of vagueness or no cause of action); Campo v. Correa, 01-2707, pp. 8-10 (La.6/21/02), 828 So.2d 502, 508-09 (medical malpractice claim brought well within three years from the date of the act of malpractice; directly quoting Hebert in its interpretation of provision); Bailey v. Khoury, 04-0620, p. 8-9 (La.1/20/05), 891 So.2d 1268, 1275 (malpractice suit filed within a year of child's birth, well within three years from the act of malpractice); White v. West Carroll Hosp., Inc., 613 So.2d 150, 154-55 (La.1992)(medical malpractice claim brought well within three years), in the interpretation of non-LMMA provisions, State Bd. of Ethics v. Ourso, 02-1978, pp. 6-7 (La.4/9/03), 842 So.2d 346, 350-51 (Campaign Finance Disclosure Act); State Through Div. of Admin. v. McInnis Bros. Const., 97-0742, pp. 5-7 (La.10/21/97), 701 So.2d 937, 941-42 (Public Works Act); *76 Segura v. Frank, 93-1271, pp. 17-18 (La.1/14/94), 630 So.2d 714, 726-27 (automobile accident involving uninsured motorists and the LIGA; relying on Hebert's consideration of the nature of a "pending" lawsuit); Naquin v. Lafayette City-Parish Consol. Government, 06-2227, pp. 16-17 (La.2/22/07), 950 So.2d 657, 668 (Local Government Fair Competition Act; distinction between peremption and prescriptive periods); Exxon Pipeline Co. v. Louisiana Public Service Com'n, 98-1737, p. 14, n. 10 (La.3/2/99), 728 So.2d 855, 863, n. 10 (Public Service Commission; citing Hebert for the principle that Legislative purpose is one of the most significant factors in distinguishing peremptive and prescriptive statutes); Reeder v. North, 97-0239, p. 12 (La.10/21/97), 701 So.2d 1291, 1298 (legal malpractice provision; citing Hebert as authority that contra non does not apply to peremption), or in the application of the pre-1987 version of La.Rev.Stat. § 9:5628, David v. Our Lady of the Lake Hosp., Inc., 02-2675, p. 1, n. 1(La.7/2/03), 849 So.2d 38, 41, n. 1(1979 blood transfusion); Whitnell v. Silverman, 95-0112, p. 6 (La.12/6/96), 686 So.2d 23, 27 (constitutionality of provision, 1986 malpractice suit); Hillman v. Akins, 93-0631, p. 5 (La.1/14/94), 631 So.2d 1, 4 (all acts of malpractice at issue occurred in 1985 or 1986; cites Hebert as holding discovery rule category of contra non inapplicable to claims brought under La. R.S. 9:5628); Taylor v. Giddens, 618 So.2d 834, 842(La.1993)(1986 malpractice claim arising out of alleged malpractice in 1982; citing Hebert in support of the position that the discovery rule is inapplicable to survival actions filed more than three years after malpractice); Whitnell v. Menville, 540 So.2d 304, 308 (La.1989)(claim arising out of treatment in 1980; suit filed 1986; distinguishes Hebert); Crier v. Whitecloud, 496 So.2d 305, 307-08 (La. 1986)(1983 malpractice suit);[5]Crier v. Whitecloud, 486 So.2d 713, 714 (La. 1986)(1983 malpractice suit; released on the same day as Hebert). Admittedly, Spradlin also contains dicta.
Commentators have been critical of the Hebert decision and have also interpreted this provision as peremptive. FRANK L. MARAIST & THOMAS C. GALLIGAN, JR., LOUISIANA TORT LAW §§ 10.05, 10.06, n. 12 (2006 ed.); DONALD BARON WIENER, Hebert v. Doctors Memorial Hospital: Three-Year Limit on Exercising Medical Malpractice Claims Held to Be Prescriptive, 61 TUL. L.REV. 941 (1987). At the time of its release, commentators criticized the Court's decision to focus on structural arguments, while never explicitly addressing the policy concerns underlying La.Rev.Stat. § 9:5628 and whether a peremptive interpretation was necessary to implement them. WIENER, supra, at 948. Policy, however, apparently was the decisive factor; yet, critics commented upon the Court's failure to discuss policy, which was argued left the impression that the Court's reasoning was based only on weighing several structural criteria, when in reality those tests were at most only tools for searching for the policy underlying the statute. Id. More disturbing to the critic, though, was the Court's refusal to be bound by the clear language of the statute, the disregard of which, on its face, was inconsistent with the method *77 of statutory interpretation mandated by the Civil Code. Id. at 948-49. The criticism concludes:
In drafting Revised Statute section 9:5628, the legislature specifically considered how far to subordinate private interests to those of society and described how the statute was to function. The legislature decided that, `in all events,' medical malpractice actions would be extinguished after three years. When the legislature makes such an explicit policy judgment and chooses clear language to express it, the court may be abusing its discretion by ignoring that choice. In this case, the court's purported search to implement the policy behind the statute became, in effect, a review of the legislature's policy choice. The legislature did not sanction that authority by adopting the peremption conception in 198[2].
Id. at 949.
Moreover, prior to Hebert's release, commentators perceived the three-year provision as peremptive, explaining:
Statues[Statutes] of limitations specifically for malpractice suits have been shortened, where none existed they have been enacted, and the discovery rule has been sharply curtailed. The most common approach, instituted in nine states,[[6]] is reflected in the Louisiana provision. A fixed prescriptive period of short duration (1 year in Louisiana) begins to run upon discovery of injury. Superimposed upon this, however, is a peremptive period of three years from the date of the tort, after which the suit is barred regardless of when discovered.
KANDY G. WEBB, Comment, Recent Medical Malpractice LegislationA First Checkup, 50 TUL.L.REV. 655, 673 (1976).
Although prior to Hebert there was no opinion by this Court on this precise issue, the appellate courts did address the issue. Hebert cited to two cases decided by this Court that had "treated § 9:5628 as prescriptive." 486 So.2d at 723. These cases were Lott v. Haley, 370 So.2d 521, 524 (La.1979), which dealt directly with the retroactive application of La.Rev.Stat. § 9:5628 to an act of malpractice occurring prior to its enactment, and Chaney v. State of La. DHHR, 432 So.2d 256, 258-59 (La. 1983), which did not address peremption, but found plaintiffs' cause of action brought in 1981 arising out of malpractice, which occurred in 1977, but was not discovered until 1979, had prescribed. Interestingly, Chaney affirmed the holding of the First Circuit that found the action for malpractice which was discovered in 1979, but not filed in the courts until 1981, was perempted. Chaney v. State of La. DHHR, 423 So.2d 717, 717-18 (La.App. 1st Cir.1982). Admittedly, this Court specifically found the court of appeal did not err in affirming the judgment of the trial court sustaining defendants' exception of prescription, but it did not reverse the court of appeal's finding that the matter was perempted.[7]
Hebert next asserted that the only appellate cases on this issue had decided that La.Rev.Stat. § 9:5628 was a prescriptive statute or assumed it was so. The Court *78 cited Chalstrom v. Desselles, 433 So.2d 866, 868 (La.App. 4th Cir.), writ denied, 438 So.2d 215 (La.1983), which did find that the three-year provision established a simple prescription, and Hernandez v. Lafayette Bone & Joint Clinic, 467 So.2d 113, 114 (La.App. 3d Cir.1985), which cited to Chalstrom as authority for that position.[8]
The Hebert court, however, did not address either Blanchard v. Farmer, 431 So.2d 42, 42-43 (La.App. 1st Cir.), writ denied, 438 So.2d 571 (La.1983), in which the plaintiff's arguments describe the provision as the peremptive period provided by La.Rev.Stat. § 9:5628, and the court found that under La.Rev.Stat. § 9:5628, plaintiff's claim was "barred because it was not filed within three-years of the act of malpractice,"[9] or Valentine v. Thomas, 433 So.2d 289, 291 (La.App. 1st Cir.), writ denied, 440 So.2d 728 (La.1983), which stated "Plaintiff did not discover the alleged act of malpractice until after the three year peremptory period provided in LSA-R. S. 9:5628 had passed; therefore, he was precluded from bringing an action for damages." While both Blanchard and Valentine primarily concern the applicability and constitutionality of the statute rather than an interpretation of its provisions, these cases, in conjunction with Chaney, indicate a trend in the First Circuit to treat the three-year provision as peremptive.
Interestingly, the First Circuit, in Hebert v. Doctors Memorial Hosp., 477 So.2d 1227, 1230 (La.App. 1st Cir.1985), found that the three-year provision did not come into play, so the Court did not need to consider the question of whether the three-year period was prescriptive or peremptive. In a footnote, the court stated, however, that the question had been addressed: the Fourth Circuit in Chalstrom held the provision prescriptive, but on the other hand, the First Circuit in Blanchard had stated, albeit in dicta, that the period was peremptive, indicating a potential split in the two circuits. Id. at 1230, n. 3. The appellate court did not address either Valentine or Chaney in the note although it did state that the instant case graphically demonstrated an untoward result of holding the three-year period peremptive in that a plaintiff, who can take advantage of interruption of prescription, may be able to keep his claim alive much longer than the three-year limit imposed on the plaintiffs, who come under the discovery rule. Id. at 1230, n. 3.
In Grant v. Carroll, 424 So.2d 389, 392 (La.App. 2d Cir.1982) the court held that plaintiff's claim was prescribed by the passage of three years from the date of malpractice, and in Juneau v. Hartford Ins. Co., 458 So.2d 1011, 1013 (La.App. 3d Cir.), writ denied, 462 So.2d 198 (La.1984), the court found the prescription applicable in medical malpractice cases was provided by La. R.S. 9:5628, but the case did not involve the three-year provision.
Thus, a split in the Circuits, particularly the First and Fourth, existed at the time Hebert was decided. Notwithstanding, *79 this Court in Hebert did not address the split, nor was the distinction between peremption and prescription addressed by this Court in Chaney, even though the appellate court decision in that case clearly determined the action filed three years after the act of malpractice was perempted. Interestingly, prior to our opinion on original hearing in this case, the appellate courts were once again in conflict over the treatment of the three-year provision as either prescriptive or peremptive, as apparently were the holdings of this Court in light of Spradlin. See LeBreton v. Rabito, 94-1440 (La.App. 4 Cir. 2/23/95), 650 So.2d 1245, 1247 (holding the reference in La. Rev.Stat. § 40:1299.47(B)(2)(b) "are to the three year peremption of R.S. 9:5628 along with its one year prescription"); Pena v. Williams, 03-0982, p. 4 (La.App. 4 Cir. 2/4/04), 867 So.2d 801, 804 (holding the three-year provision of La.Rev.Stat. § 9:5628 is peremptive); Borel v. Young, 06-352, p. 5 (La.App. 3 Cir. 12/29/06), 947 So.2d 824, 827 (relying on Hebert in holding the three-year provision prescriptive in nature).
The plurality opinion in this case also discusses the titles of the 1975 and 1987 Acts. Reviewing the 1987 Act in light of Hebert, it is important to note that the terms contained in the title of the 1975 Act regarding the maximum prescriptive period no longer appear in the title of the 1987 Act. The time periods contained in the 1987 Act are described as time limitations applicable to actions for damages against psychologists, and not as the maximum prescriptive period. The digests to the engrossed and reengrossed versions of the bill also describe the time periods as time limitations or time limits, and the summary of the amendments adopted by the House explain the amendment adds a provision relative to actions for medical malpractice to include psychologists in the one-year prescriptive period for filing such claims. Notably, the three-year period is not discussed, even though the most significant changes to the statute are made to that provision.
Furthermore, as discussed in the plurality opinion, La.Rev.Stat. § 40:1299.47(A)(2)(a) provides that "[t]he filing of the request for a review of a [malpractice] claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, ... of the issuance of the opinion" by the panel. However, I point out by the statute's own provisions, this suspension applies only to the running of prescription:
Ninety days after the notification to all parties by certified mail by the attorney chairman of the board of the dissolution of the medical review panel or ninety days after the expiration of any court-ordered extension as authorized by Paragraph (1) of this Subsection, the suspension of the running of prescription with respect to a qualified health care provider shall cease.
La.Rev.Stat. § 40:1299.47(B)(3). Although the plurality opinion asserts that a peremptive interpretation will render meaningless this suspensive provision, the provision speaks only to the running of prescription. Therefore, a peremptive interpretation should have no effect on any suspension of prescription contained in the one-year and discovery provisions.
Rather, the statute does provide that a health care provider "may raise any exception or defenses available pursuant to R.S. 9:5628 in a court of competent jurisdiction and proper venue at any time without need for completion of the review process by the medical review panel," and "[i]f the court finds that the claim had prescribed or otherwise was perempted prior to being filed, the panel, if established, shall be *80 dissolved." La.Rev.Stat. § 40:1299.47(B)(2)(a) and (b)(emphasis added). La.Rev.Stat. § 9:5628 speaks to the time limitations within which a claim for malpractice must be brought. If, as Hebert and the plurality opinion find, the time limits are prescriptive, then how could a court under La.Rev.Stat. § 40:1299.47(B)(2)(b) find the matter was perempted? A reading of these provisions implies exceptions of both prescription and peremption arise from the provisions of La.Rev.Stat. § 9:5628. Such reading would support the conclusion that the three-year provision is peremptive.
Significantly, the language "or otherwise was preempted" was added by 1984 La. Acts No. 435, § 5. Pursuant to its statutory revision authority, the Louisiana State Law Institute substituted "perempted" for "preempted" in 1986. I reviewed the legislative history of 1984 La. Acts No. 435 that added the phrase "or otherwise was preempted" to La.Rev.Stat. § 40:1299.47(B)(2)(b). At the time of the addition, present day La.Rev.Stat. § 40:1299.47(B)(2)(a) and (b) were contained in the same subsection, (B)(2), and prior to the amendment provided:
A health care provider, against whom a claim has been filed under the provisions of this Part, may raise the peremptory exception of prescription in court at any time, without need for completion of the review process by the medical review panel. If the court finds that the claim had prescribed prior to being filed, the panel, if established, shall be dissolved.
The amendment revised the provision as follows:
A health care provider, against whom a claim has been filed under the provisions of this Part, may raise any exception or defenses available pursuant to R.S. 9:5628 in a court of competent jurisdiction and proper venue the peremptory exception of prescription in court at any time, without need for completion of the review process by the medical review panel. If the court finds that the claim had prescribed or otherwise was preempted prior to being filed, the panel, if established, shall be dissolved.
My review of the history does not provide an explanation for the revision, although I believe it is self-explanatory and supportive of the peremptive interpretation of the three-year provision. Also, an examination of the provisions of La.Rev.Stat. § 40:1299.47(B)(2)(b) and its legislative history, which demonstrates that the phrase "or otherwise was perempted" was added in 1984, discredits the majority's assertion that "otherwise was perempted" may refer to the three-year peremptive period contained in La.Rev.Stat. § 9:5628.1 governing the time for filing an action for liability from the use of blood and tissues, as that statute was not enacted until 1999, having been added by 1999 La. Acts No. 539. Nevertheless, my reading of the provisions of La.Rev.Stat. § 40:1299.47 does not support the holding in Hebert or the plurality opinion on rehearing in this case that the three-year provision is prescriptive.
Finally, the plurality opinion shows an abhorrence to overruling Hebert's holding on the prescriptive nature of the three-year provision, but does not hesitate to effectively overrule Hebert's holding on the interruption of prescription by the filing of suit against a solidary tortfeasor. To reach its conclusion, which does effectively overruled a portion of Hebert, the plurality opinion extends the holding in LeBreton, which found that malpractice plaintiffs, as a matter of law, could not benefit by the simultaneous application of the general provision on interruption of prescription *81 found in La. Civ.Code art. 3462 with the specific provision on suspension of prescription contained in La.Rev.Stat. 40:1299.47(A)(2)(a),[10] to the facts of this case. In its criticism of the majority opinion on original hearing, the plurality opinion now cites to the principles of jurisprudence constante in its refusal to overrule the Hebert holding as to the three-year provision. However, jurisprudence constante does not give the Court license to perpetuate error as we are bound under our Constitution and the Civil Code to uphold and abide by the law. James L. Dennis, Interpretation and Application of the Civil Code and the Evaluation of Judicial Precedent, 54 La.L.Rev. 1, 10 (1993-1994). In my view, the affirmation of the holding in Hebert that the three-year provision is prescriptive is clearly a perpetuation of error as demonstrated by the reasons set forth in this concurrence because such an interpretation does not uphold or abide by the clear and unambiguous law enacted by the Legislature. Therefore, I would overrule Hebert in its holding that the three-year provision of La.Rev.Stat. § 9:5628 is prescriptive.

ON APPLICATION FOR REHEARING
Rehearing denied.
CALOGERO, Chief Justice, Concurring in Denial of Rehearing and Assigning Reasons:
I concur in the majority's denial of the plaintiffs' second application for rehearing because La. Sup.Ct. Rule IX, § 9, specifically provides as follows;
When a case has been decided on rehearing, another application for rehearing will not be considered unless the applicant has not theretofore applied for and been granted a rehearing or unless the court, in deciding the case on rehearing, has expressly reserved to the unsuccessful party or parties the right to apply for another rehearing.
Thus, this court cannot consider another application for rehearing filed by a party who has previously been granted a rehearing, like the plaintiffs herein.
Nevertheless, I would reiterate my position in this case that the holding in LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, should not be extended to the fact situation presented by this case, which is clearly distinguishable from LeBreton. Furthermore, I use this opportunity to reurge the position set forth in my dissent to the majority's decision on rehearing that, pursuant to La. Civ.Code art. 2324(C), prescription against the physicians was interrupted in this case by the timely filing of the plaintiffs' suit against the hospital, an alleged joint tortfeasor with the physicians.
The plaintiffs' second application for rehearing gives forceful reasons to support their request that this court reconsider its finding that their suit against the physicians is barred by prescription. For example, in what is perhaps their strongest argument, the plaintiffs note that the majority's decision is based, at least in part, on the erroneous premise that "the Medical Malpractice Act prohibits the filing of a medical malpractice claim against a qualified health care provider prior to presenting the complaint to a medical review *82 panel." Borel v. Young (on rehearing), 07-0419 (La.7/1/08), p. 15, 989 So.2d 42, 67. As the plaintiffs point out, two exceptions allow the filing of a medical malpractice claim prior to presentation of the complaint to a medical review panel: (1) when the defendant healthcare provider is not qualified under the Medical Malpractice Act, and (2) when a qualified healthcare provider has waived the medical review panel process. This court's holding in this case ultimately creates a limited class of cases in which the general codal articles relative to interruption of prescription do not apply, to the prejudice of the plaintiffs in that limited class of cases. Furthermore, this inequitable situation has been created, not by the will of the legislature, which has the authority to make policy decisions about when litigation should be time barred, but by this court. The resulting inequity creates a serious problem that should ordinarily prompt this court to reconsider its holding.
Additionally, the majority decision herein ignores the well-settled principle that provisions of the Medical Malpractice Act must be strictly construed because they grant immunities or advantages to special classes in derogation of the general rights available to tort victims. Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210, 1216. It also ignores the fact that "prescriptive statutes must be strictly construed against prescription and in favor of the obligation sought to be extinguished, with the effect that, of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted". Lima v. Schmidt, 595 So.2d 624, 629 (La.1992).
However, as I have already conceded, the current rules prohibit this court from considering this second application for rehearing from a party in whose favor rehearing was previously granted. That being the case, I would suggest, perhaps for prospective application, that the conference consider modifying La. Sup.Ct. Rule IX, § 9, to allow the filing of a second application for rehearing by a previously-successful applicant when, as here, the decision on rehearing is unfavorable to the applicant for reasons that have not previously been addressed by this court.
NOTES
[1] It is not apparent from the record if Dr. Castor filed a similar exception.
[2] La. Civ.Code art. 2324(C) provides: "Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors."
[3] La Rev. Stat. § 40:1299.47(A)(2)(a) provides:

The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until ninety days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part. The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review. Filing a request for review of a malpractice claim as required by this Section with any agency or entity other than the division of administration shall not suspend or interrupt the running of prescription. All requests for review of a malpractice claim identifying additional health care providers shall also be filed with the division of administration.
[4] Even the Hebert court apparently conceded that the language of the then existing statute suggested that peremption was intended: "Defendant's strongest argument in support of peremption is that the language of the statute suggests that peremption is intended.... However, not one case in the jurisprudence considering the distinction between prescription and peremption has accentuated the language used in a given statute as determinative of which was intended." 486 So.2d at 724.
[5] Further support for this conclusion can be found in La.Rev.Stat. §§ 9:5604, 5605, 5606, in which the Legislature utilized essentially identical language to that contained in the three-year provision at issue to establish a three-year peremptive period for actions for professional accounting liability, legal malpractice, and professional insurance agent liability, respectively.
[1] As set forth in its title, the purpose of 1987 La. Acts No. 915, § 1 is as follows:

To amend and reenact R.S. 9:5628(A) and Chapter 28 of Title 37 of the Louisiana Revised Statutes, to be comprised of R.S. 37:2351 through 2366, relative to licensing of psychologists, to provide for definitions; to provide with respect to the State Board of Examiners of Psychologists, and its organization, duties, powers, membership, and members' terms of office; to provide for judicial review; to provide for fees; to provide with respect to licensure, including provisions for requirements therefor, for renewal of licenses; for filing copies of licenses with the office of the secretary of state; to provide with respect to the denial, revocation, or suspension of licenses; to provide with respect to offenses and for disciplinary action and for violations and penalties; to provide for injunctive proceedings; to provide with respect to the protection of privileged information; to provide exceptions; to provide with respect to the scope of the Chapter, to provide for time limitations applicable to actions for damages against psychologists, and to provide for related matters.
[2] To the contrary, the Digest to the Engrossed and Re-Engrossed versions of House Bill No. 1035, the origin of 1987 La. Acts. No. 915, § 1 explains: "Proposed law adds licensed psychologists to the enumeration of those against whom actions for damages arising out of patient care must be brought within the stated time limits and otherwise retains present law." (Emphasis added.)
[3] Presumably, by exempting claims of fraud, the legislature intended to restore the third category of contra non valentem so as to prevent a potential defendant from benefitting from the effects of peremption by intentionally concealing his or her wrongdoing.
[4] See also and compare, LSA-R.S. 9:5604, 9:5605, and 9:5606, which govern actions for professional accounting liability, legal malpractice, and professional insurance agent liability, respectively. Therein, the legislature utilizes essentially identical language to that contained in both time periods of LSA-R. S. 9:5628, including the mandatory "shall," and then expressly declares that the "one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended."

LSA-R.S. 9:5604 provides, in relevant part:
A. No action for damages against any accountant duly licensed under the laws of this state, or any firm as defined in R.S. 37:71, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide professional accounting service shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. ... The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended. [Emphasis added.]
LSA-R.S. 9:5605 similarly provides, in relevant part:
A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. ... The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended. [Emphasis added.]
LSA-R.S. 9:5606 provides, in relevant part:
A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
....
D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended. [Emphasis added.]
[5] "Actions for medical malpractice against certain health care providers, such as the defendants herein, are governed by special laws, Part XXIII of Chapter 5, Miscellaneous Health Provisions of La. R.S. 40:1299.41, et seq., and La. R.S. 9:5628, which delineate the liberative prescription applicable to actions for medical malpractice under Title 40." LeBreton, 97-2221 at 7-8, 714 So.2d at 1229.
[6] See, e.g., LSA-R.S. 40:1299.41(D) ("If a health care provider does not so qualify, the patient's remedy will not be affected by the terms and provisions of this Part, except as hereinafter provided with respect to the suspension and the running of prescription of actions against a health care provider who has not qualified under this Part when a claim has been filed against the health care provider for review under this Part."); LSA-R.S. 40:1299.41(F) ("The provisions of this Part that provide for the suspension and the running of prescription with respect to a health care provider who has not qualified under the Part, but against whom a claim has been filed under this Part, do not apply to any act of malpractice which occurred before September 1, 1981."); LSA-R.S. 40:1299.41(G) ("Notwithstanding the provisions of Subsection D, the running of prescription against a health care provider who is answerable in solido with a qualified health care provider against whom a claim has been filed for review under this Part shall be suspended in accordance with the provisions of R.S. 40:1299.47(A)(2)(a)."); LSA-R. S. 40:1299.47(A)(2)(a) ("The filing of a request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail."); LSA-R. S. 40:1299.47(A)(2)(c) ("The filing of a request for a medical review panel shall suspend the time within which suit must be filed until ninety days after the claim has been dismissed in accordance with this Section.")
[7] Throughout its provisions, the Medical Malpractice Act contains repeated references to the "suspension and running of prescription" against healthcare providers, references that are consistent with the conclusion that LSA-R.S. 9:5628 is in both its features a prescriptive statute. See, n. 6, supra. In only one of its provisions is there a reference to peremption. LSA-R. S. 40:1299.47(B)(2) provides that a health care provider against whom a claim has been filed may raise any exception or defenses available pursuant to R.S. 9:5628 in a court of competent jurisdiction and venue at any time without need for completion of the review process, and "[i]f the court finds that the claim had prescribed or otherwise was perempted prior to being filed, the panel, if established, shall be dissolved." Because the word "perempted" appears in the provision, it is suggested that the legislature must have intended the three-year period in LSA-R. S. 9:5628 to be peremptive; otherwise there would be no reason for the legislature to have included the word. However, this language was in the provision at the time of the Hebert decision, having been added by 1984 La. Acts No. 435, § 5, and since Hebert, there has been no attempt by the legislature to amend the core language of LSA-R. S. 9:5628 to specify a peremptive period. Moreover, the phrase "otherwise was perempted" in the statute clearly suggests peremption occurring "otherwise" than through LSA-R.S. 9:5628; for example, through a statute like R.S. 9:5628.1, which contains a three-year peremptive period. If that had not been the intention, the statute would simply read: "[i]f the court finds that the claim had prescribed or was perempted." Such a construction of this statute comports with the fundamental principle that "prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished;... of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted." Lima v. Schmidt, 595 So.2d 624, 629 (La. 1992). It also harmonizes and gives effect to all provisions of the Act.
[8] LSA-R.S. 9:5628.1, enacted in 1999, provides, in relevant part:

A. No action for damages against any healthcare provider as defined in this Section, whether based upon negligence, products liability, strict liability, tort, breach of contract, or otherwise, arising out of the use of blood or tissue as defined in this Section shall be brought unless filed in a court of competent jurisdiction within one year from the date of the alleged cause of action or other act, omission, or neglect, or within one year from the date that the alleged cause of action or other act, omission, or neglect is discovered or should have been discovered; however, except as provided in Subsection B, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years form the date of the act, omission, or neglect.
B. ... The three-year period of limitation provided in Subsection A of this Section is a peremptive period within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, shall not be renounced, interrupted, or suspended. [Emphasis added.]
[9] Any other interpretation of the three-year time period could, in some instances, produce the anomalous result that claims timely presented to the medical review panel might be perempted before the required review process is completed and an opinion rendered, an absurd consequence that the legislature clearly did not intend.
[10] LSA-R.S. 40:1299.47(B)(1)(a)(i) provides:

No action against a health care provided covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.
[11] LSA-C.C. art. 2324(C) states:

Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.
[12] A contrary holding would potentially subject a health care provider to an indefinite period of prescription, even after the claim has been evaluated by a medical review panel, a result clearly at odds with the purpose of the Medical Malpractice Act, which as discussed, infra, was to curtail lengthy periods for filing malpractice suits by limiting application of the discovery rule of contra non valentem to a maximum of three years.
[13] In Guitreau v. Kucharchuk, 99-2570 (La.5/16/00), 763 So.2d 575, we held that when the ninety-day period of suspension after the decision of the medical review panel is completed, the medical malpractice victim is entitled to the remainder of the one-year prescriptive period that was unused at the time the request for the medical review panel was filed.
[14] Plaintiffs assert that prescription could not have "continued" to run against Dr. Young after the period of suspension ceased because they had no reasonable cause to believe, from any source qualified to testify as to the standard of care required of an internist, that there was negligence on the part of Dr. Young. They argue that prescription could not commence until they "discovered" that he may have been negligent. The court of appeal correctly disposed of this argument: Dr. Young was not an unknown party, but was actually named in plaintiffs' request for a medical review panel, alleging that he breached the applicable standard of care in his treatment of Mrs. Borel. Further, when LGMC answered the plaintiffs' petition in April 2002, it asserted the "comparative negligence and/or fault of third parties not made defendants," alerting plaintiffs of the potential negligence of persons other than LGMC. Borel, 06-0352 at 15-16, 947 So.2d at 834.
[1] Even the Hebert court apparently conceded that the language of the then existing statute suggested that peremption was intended: "Defendant's strongest argument in support of peremption is that the language of the statute suggests that peremption is intended.... However, not one case in the jurisprudence considering the distinction between prescription and peremption has accentuated the language used in a given statute as determinative of which was intended." 486 So.2d at 724.
[2] When a term is defined by our law as in this case by our Revised Statutes, specifically La. Rev.Stat. § 1:3, there is no need to search for its definition outside the perimeters of our law. In the majority opinion, the Court needlessly looks to Black's Law Dictionary for the definition of "shall."
[3] Further support for this conclusion can be found in La.Rev.Stat. §§ 9:5604, 5605, 5606, 5628.1 in which the Legislature utilized essentially identical language to that contained in the three-year provision at issue to establish a three-year peremptive period for actions for professional accounting liability, legal malpractice, professional insurance agent, and use of blood and tissue liability, respectively.
[4] In this aspect, a commentator challenged the Court's reliance on the "time honored" Guillory v. Avoyelles Railway Co., 104 La. 11, 28 So. 899 (1900), test which set forth two factors in determining the peremptive nature of a provision: (1) an unusually strong public interest that the right limited exist for only a short time; and (2) the statute in question both created a right of action and stipulated the delay during which it could be exercised. The same commentator asserted that the Guillory test should be discarded altogether as it was created in obiter dicta and arguably was based on mere coincidence. DONALD BARON WIENER, Hebert v. Doctors Memorial Hospital: Three-Year Limit on Exercising Medical Malpractice Claims Held to Be Prescriptive, 61 TUL.L.REV. 941, 947-48 (1987).
[5] Justice Lemmon was the author of the majority opinion in Crier I which held in accordance with Hebert on the issue of the three-year prescriptive period. However, by the rehearing merely months later, Justice Lemmon concurs in the majority opinion on the issue of constitutionality of the statutory provisions, but we see his break from the prescriptive school at this point. From then on, Justice Lemmon has treated the three-year provision as peremptive, a position he advances when he authored this Court's opinion in Spradlin.
[6] Those states were California, Florida, Illinois, Iowa, Louisiana, Ohio, South Dakota, Maryland, Tennessee.
[7] The Court did reverse the court of appeal's holding that plaintiffs' claims were perempted as to those claims arising from malpractice that occurred in 1978 and in 1979, and filed within three years of the malpractice and one year from discovery, finding the claims had not prescribed. Chaney, 432 So.2d at 259-60. Notably, the court of appeal did not address the claims arising from the malpractice in 1978 and 1979.
[8] The Court also cited Billiot v. American Hosp. Supply Corp., 721 F.2d 512 (5th Cir. 1983), for the proposition that appellate cases, albeit federal appellate cases, "assumed" that the statute was prescriptive. Hebert, 486 So.2d at 723.
[9] The opinion stated that plaintiff "argues that the peremptive period provided by the statute does not begin to run until the discovery of the negligent act. This argument completely ignores the wording in the statute," and "plaintiff argues that application of this peremptive provision of L.S.A.-R.S. 9:5628 denies him access to the courts and, therefore, the statute is unconstitutional." Blanchard, 431 So.2d at 43. Notably, although the court found the action was barred, the keycite note includes the phrase by prescription, which is not included in the opinion.
[10] The issue before the LeBreton court was whether the simultaneous application of the interruption and suspension of prescription in the setting of medical malpractice was correct. The holding in LeBreton did not exclude the application of the general provisions on interruption of prescription in medical malpractice cases in other instances, just to the situation where the plaintiff sought to benefit by the simultaneous application of the interruption and suspension provisions. In this present case, the plaintiffs are not seeking simultaneous application of the interruption and suspension provisions.