CARAWAY, J.
12These two consolidated medical malpractice actions were dismissed with prejudice on the ground that the claims had prescribed. The claimant appeals both judgments. We affirm.

Facts

On June 2, 2004, Beverly Blake, individually, and on behalf of her two minor children, filed a request for a medical review panel, alleging medical malpractice against Dr. Warren Maley and Willis Knighton Medical Center in the treatment of her deceased husband, Barry Blake, who died on January 31, 2004. Specifically Blake alleged as follows:
The family, generally contends that Dr. Maley and the hospital staff breached the applicable standard of medical care by failing to diagnose and treat a fixed drug reaction after an initial dose of Ancef following a surgical procedure consisting of a left wrist fistula ligation with |sleft antecubital fistula formation and placement of internal jugular Per-macath on June 22, 2003; and the negligent administration of a second dose of Ancef on August 15, 2003 by order of Dr. Maley subsequent to a second ad *1124 mission to Wíllis-Knighton Medical Center; a third dose given on August 21, 2003; a fourth dose given on August 22, 2003 during a left arm DRIL procedure and left thigh saphenous vein harvest; a fifth dose given on August 25, 2003 preceding a penile circumcision and biopsy performed by Dr. Kevin Cline; and a sixth dose given perioperatively during this procedure. The fixed drug reaction caused peripheral vascular ischemia among other medical complications which led to the subsequent amputation of Mr. Blake’s left hand, four fingers of his right hand, his right great toe, a partial penectomy, and a left below-knee amputation, as well as other complications set forth in Mr. Blake’s medical records.
On June 16, 2004, Blake supplemented the request for a medical review panel and named as additional defendants, LSU Health Sciences Center and Dr. Kevin Cline.
On May 15, 2007, the medical review panel unanimously ruled in favor of all defendants. The medical review panel decision, mailed on May 25, 2007, included written reasons which stated as follows:
Having reviewed all the evidence submitted and the allegations that Drs. Ma-ley and Cline failed to make the diagnosis of a fixed drug eruption in a timely fashion, we cannot support that supposition. Although we recognize that fixed drug eruption was suggested as a diagnosis by Dr. Haynie, the dermatologist, we do not feel that diagnosis can be absolutely confirmed in a patient with the commonly seen sequelae of a patient with severe vascular disease, renal failure and diabetes. We also question as to whether the antibiotic Ancef was ^established as the drug or agent which would have led to this process, if it existed.
In view of that we cannot support the suggestion that failure to make that diagnosis during the course of this patient’s care would fall beneath the standard of care. The decision making during his care was reasonable and appropriate.
We find the care provided by the hospitals involved met the standard of care.
On July 6, 2007, Blake wrote to counsel for Dr. Cline informing him that her attorney was no longer handling the case but that a settlement was still possible. No settlement of the matter occurred nor was a lawsuit filed by Blake.
On July 18, 2009, Blake wrote the Louisiana Commissioner of Administration, Division of Administration, requesting a “review of the medical review panel decision.” Blake alleged that she became very ill shortly after the medical panel decision and was “unable and in no condition to handle any of my personal business.” Blake alleged that her attorney had discontinued his service “without any explanation to me.” She claimed that “because of [her] illness, [she] was unaware of what [she] needed to do to continue with this matter.” On August 28, 2009, Blake sent a letter to the Louisiana Patient’s Compensation Fund (“PCF”) informing it of her choice “to re-file a request for a medical review panel” arising out of Drs. Maley |5and Cline’s administration of Ancef to her husband in June through August of 2003.
On October 7, 2009, the PCF notified Blake that it had set the matter up as PCF No.2009-01115. The letter further informed Blake that the PCF had no records on Dr. Warren Maley. A second letter from the PCF informed Blake that it had received her $100 fee and was instituting the medical review panel action. By letter to the PCF on October 12, 2009, Blake added Willis-Knighton and Donna Hall, *1125 Barry Blake’s attending nurse, to the claim.
On December 8, 2009, both Dr. Cline and Willis-Knighton filed exceptions of prescription. Hall followed on January 13, 2010, adopting by reference the arguments made by Willis-Knighton. All parties argued the provisions of La. R.S. 9:5628 which read as follows in relevant part:
A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising, out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
lfiB. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
Further, Willis-Knighton cited La. R.S. 40:1299.47(B)(3) which provides for the suspension of prescription during the medical review panel process as follows:
B. (l)(a)(i) No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant’s proposed complaint has been presented to a medical review panel established pursuant to this Section.
[[Image here]]
(3) Ninety days after the notification to all parties by certified mail by the attorney chairman of the board of the dissolution of the medical review panel or ninety days after the expiration of any court-ordered extension as authorized by Paragraph (1) of this Subsection, the suspension of the running of prescription with respect to a qualified health care provider shall cease.
Blake opposed the exceptions urging her entitlement to a new medical review panel because none of the physicians who comprised the first panel was a dermatologist. Further, Blake argued that she became ill with chronic depression and anxiety before she could further pursue the claim and after her counsel withdrew from the case. Thus, Blake claimed mental incapacity to timely file the suit.
|7A hearing on the exceptions occurred on May 10, 2010. Blake argued that her attorney did not give her enough notice to file the malpractice claim within the 90-day period. The trial judge granted each defendant’s exception and dismissed all claims with prejudice.
On November 3, 2009, Beverly Blake instituted suit in district court against Dr. Warren Maley arising out of the 2003 administration of Ancef to Barry Blake. On November 29, 2009, Dr. Maley filed an exception of prescription urging the application of La. R.S. 40:1299.47(B)(3) to the suit which had been filed two years and five months from the date that the medical review panel opinion had been sent to Blake. Blake opposed this exception arguing that she was mentally incapable of filing the claim timely. A hearing on the exception occurred on February 1, 2010. Blake argued that the physicians who made up the medical review panel were not qualified. She also contended-that her attorney did not give her adequate notice *1126 of the medical review panel decision and that her mental incapacity through July of 2009 prevented her from filing the suit. The trial court granted Dr. Maley’s exception and dismissed the suit with prejudice.
Blake appeals the judgments in two separate appeals which have been consolidated for review. She raises the same issues on appeal that she argued in the exceptions, namely that her mental incapacity prevented her from | «filing suit, the physicians who made up the medical review panel were not qualified and that her attorney did not give her adequate notice to file the suit. Blake also argues that the trial court did not give her adequate time to show cause and present her evidence at the hearings on the exceptions.

Discussion

The prescriptive period for medical malpractice is set forth in La. R.S. 9:5628 as noted above. This statute sets forth two prescriptive limits within which to bring a medical malpractice action, namely one year from the date of the alleged act or one year from the date of discovery, with a single qualification that the discovery rule is expressly made inapplicable after three years from the act, omission or neglect. Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502; Holmes v. LSU/E.A. Conway Medical Center, 43,662 (La.App.2d Cir.10/22/08), 997 So.2d 605. Both the one-year and three-year limitation periods of La. R.S. 9:5628 are prescriptive. Borel v. Young, 07-0419 (La.11/27/07), 989 So.2d 42.
The plea of prescription must be specifically pleaded, and may not be supplied by the court. La. C.C.P. art. 927(B); Carter v. Haygood, 04-0646 (La.1/19/05), 892 So.2d 1261; Campo v. Correa, supra. Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. Carter v. Haygood, supra; Campo v. Correa, supra. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. Id. On the trial of the prescription exception pleaded at or prior to the trial of the ease, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 981.
In this case, Blake concedes that the date of the alleged malpractice occurred on June 22, 2003, when Barry Blake received the drug Ancef. Blake never alleged that the alleged malpractice was unknown to her. Thus, Blake timely instituted her claim with the medical review panel on June 2, 2004. Under La. R.S. 40:1299.47(B), Blake’s cause of action was suspended by the medical review panel proceedings until the mailing of the opinion on May 27, 2007. After that time, Blake had ninety days plus the additional twenty days left on her original year to file suit in district court. Blake filed a duplicate claim with the medical review panel on August 28, 2009, and a suit in district court on November 3, 2009, nearly two years after the prescriptive period for filing suit had tolled and more than six years after Blake’s stated date of the act of malpractice. Thus, her claims have clearly prescribed.
[ ^Regarding Blake’s claim concerning her mental capacity, the general rule of Civil Code Article 3468 provides:
Prescription runs against absent persons and incompetents, including minors and interdicts, unless exception is established by legislation.
There is no statutory exception applicable in this case, and the three-year period of La. R.S. 9:5628(B) acts as the outside maximum time period which bars medical malpractice actions.
*1127 Blake’s claims regarding her attorney’s failure to notify her and the makeup of the medical review panel do not prevent the running of prescription regarding her claims against appellees. Furthermore, the record does not bear out her claim that she was not given a fair hearing on the exceptions. Blake was allowed to state her arguments and present her case.

Conclusion

For the foregoing reasons, the judgments of the trial court in these consolidated cases dismissing all of plaintiffs claims with prejudice against all defendants on the grounds of prescription are affirmed at appellant’s costs.
AFFIRMED.
APPLICATION FOR REHEARING
Before STEWART, GASKINS, CARAWAY, PEATROSS and LOLLEY, JJ.
Rehearing denied.